United States District Court
Northern District of Florida
Pensacola Division

PROVIDED TO
SANTA ROSA C.I. ON
OCT 22 2021
RL by

Robert Sinclair Lee
DC# T15204
Plaintiff

V.                              Case No.: 3:20-cv-5462-MCR-HTC

Lieutenant Tyler McCraine,
Et. al.,
Defendants.

### Plaintiff Response To Defendants' Partial Motion For Summary Judgment (Amended)

Plaintiff Robert Sinclair Lee, DC# T15204, pro se, and pursuant to Rule 56 F, Fed. Rule of Civil Proc. hereby files this ~~nos~~ response request this court to grant him summary judgment as to the liability's of defendants' Dice, McCraine, Richburg, Catlunch, Town, Jones and J. Boatwright, hereby filing this response to Defendants' Summary Judgment, and allege the following in support thereof:

### Affidavit in Opposition to Defendants' Motion (Partial) Summary Judgment

FILED USDC FLND PN
OCT 25 '21 PM12:01 GM

Robert Sinclair Lee states:

1. I am the plaintiff in the above titled case. I make this affidavit in opposition to defendants' partial motion for summary judgment on my claims concerning excessive force, due process violations, depriving of property, misuse of power, failure

- 1 -

to intervene, failure to supervise, deliberate indifference against me by defendants' Richburg, Tona, Cattnach, McCraine, Dice, Buntwright and Jones. Each acting under color of state and federal law,

2. The video evidence and defendants' response to the questions to interrogatories in this matter are inconsistent and contradicting to the violtions of plaintiffs rights. The incident reports state that I was quelling a disturbance. And that I was woke up for disobeying a verbal order. Defendants' claim that I refused to strip search and forced cell-extraction was utilized. Defendants' Richburg and Cattnach maliciously and sadistically beat me with hand restraints during the use of Force. (Ex. E) (Ex, CCC)

3. The defendants' are not entitled to summary judgment because there are genuine issues of material facts to resolve. These issues are identified in the accompanying statement of Disputed Factual Issues filed by the plaintiff pursuant to the local rules of this district court. The facts are set out in this affidavit.

4. On September 4, 2019, I was the victim of malicious and extremely violate excessive force at Santa Rosa Correctional Institution without proper penal justifing the amount of force used. (EX, CCC)

5. On this same day around 12:30 pm to 4:00 pm Defendants' Lieutenant T. McCraine and Corrections Officer M. Tona came to my cell door G121L and told me to submit to hand restraints to be placed on property restriction or run-it. See (Ex. J)

6. I asked both defendants' Tona and McCraine "what did I do wrong" Defendant McCraine says "we don't need a reason are you gonna cuff-up"

-2-

7. Minutes later defendants Tona and McCraine return with psyche counselor V. Adams whom informs me that you know what they want and once she leaves "its" out of her hands.

※.

8. Shortly after defendants' McCraine, Cattunch, Boatwright came back to my cell to place a chains on the door with a Portable Camera. See (Ex.I)[2]

9. Contrary to the defendants incident reports, I never did recieve any disciplinary report for any ~~one~~ rule violation of the Florida Administrative Code. (Ex.H) 19-15999

10. Defendant McCraine then authorized for CiO. Eiland to apply (2) short burst of chemical agents. See (Ex.I)[2]

11. Defendant Dice comes off camera to tell me that he has orders from up front to teach me a lesson by forcing the cell extraction team on me.

12. Chemical Agents is utilized twice more ~~than~~ with McCraine authorizing the application.

13. Before this occurred no physical force was applied and I did not have no injuries. See (Ex. H and I)[2]

14. McCraine then informs me that she has to summon the nurse K. Jobst about the importance of decontamuation shower after being exposed to chemical agents. (Ex.I)[2]

15. Then McCraine and Nurse Jobst come to my cell door where I agree to strip-search and shower. (Ex.I)[2]

-3-

16. McCraine then directs Cattnach and John Doe to strip search me. I give Defendant Cattnach my pants, shirt and boxers. It can be seen on film these items - except boxers - can be seen thrown in front of Lieutenant T. McCraine feet. Cattnach then tells me I did not do it right and to do it again.

17. McCraine gets mad and slams the Food-port Flap, to tell me if I don't do it right the cell-extraction Team will be utilized.

18. Contrary to the incident reports camera evidence shows I complied and the need for force was not necessary. See (Ex. 1)[2]

19. McCraine, Dice, Jones, Richburg, Cattnach, Tona, Miller, Williams all march back up to my cell-door.

20. McCraine goes through the routine "are you gonna comply to search and cold-water shower.

21. Miller the shield man is winking his eye, Richburg is giving me a evil stare, Cattnach is frowning his face, Tona has a mean look and The last man Williams giving me a cold stare.

22. I then tell them I'm willing to comply. Miller shakes his head in the negative - so I lay my mattress on the floor and lay on top of it with my hands behind my neck.

23. McCraine and Dice then open my cell door and Miller, Richburg, Cattnach, Tona, and Williams rush in my cell with riot helmets, jackets and black martial arts gloves. I'm on my stomach on the mattress. Miller jumps on my back with a plexiglass shield. Richburg punches me in the head, neck and face.

-4-

24. Cattuach is on my right punching me repentedly in my temple and eye. Tova is punching me in my spine and ribs even elbows me several times trying to break my spinal cord. Williams is pinching my leg really hard and pulling at my boxers in the back as to violate me. He only apply's one leg-shackle.

25. Richburg hits me several times with handcuffs as brass-knuckles in my face, eye, neck, back and left-ear. Then passes them to Cattuach who maliciously hits me 2 solid hard times in the back of my right ear. <u>See</u> (Ex.E)

26. Defendants' McLanRine and Dice are standing in the doorway blocking the view of the cameras chanting "stop resisting" inmate. <u>See</u> (Ex.I)

27. Defendants' Richburg, Tova, Cattuach, did not intervene to stop the assault and battery as they also participated by striking me as described.

28. During this malicious attack Cattuach choked me while Richburg kneed and kicks me in the face. Richburg and Cattuach both clawed my right and left eyes out with chemical agents on their gloves.

29. At this point I am yelling for them to stop. Cattuach trys to cover my mouth with his hand.

30. I endured lacerations to my scalp, numerous bruises to my neck, face and sholders; my left ear was tore inside due to being hit extremely hard by Richburg. <u>See</u> (Ex.E)

31. Cattuach even snapps my right thumb and finger in the event of this vicious attack.

-5-

32. McCraine and Dice both stand watch when they had the power and authority to stop these offials from brutinly beating me , but, failed to do so.

33. Once this is over "1 MINUTE 30 Seconds" I was then forced on my feet, even though to the point of being Knocked unconcious – escorted to the shower – where McCraine authorizes a force shower which she was suppost to write a disciplinary report to justify this action per. Chapter 33-602. 210 Use of Force (Ex. K ¿ I)²

34. Evidence from All camera's will show me being stripped nude for All to see my buttock's and gentials outside the shower. This is a normal prestice done at Santa Rosa Corrections to belittle and degrade inmates. See (EX.I)²

35. I'm then took out of the shower by Miller and Richburg boxers are put back on I turn to go be seen by the nurse for treatment of injuries; both my eye's are swollen shut but, my right eye I see C.O. Jones who is operating the camera smiling at me.

36. Once we all are in the medical room I tell all then why did yall beat me with handcuff's; Richburg tells me that's what happens when inmates don't like to cooperate with "them".

37. The Nurse Jobst then askes me where all are you hurt At I tell her everywhere! So she cleans my ear but tells me and security that it's gotta be glued closed. Also that she's concerned that my eye's are damaged very badly.

-6-

38. Richburg and Dice says it's count time so put Him on the call-out for a follow-up to see the doctor b/c they can move or escort me during count time.

39. So then I explain to Nurse Jobot that I was bent with handcuff's an she needs to write a incident report.

40. McCrainie tells me to just lay down and I would not recieve a Disciplinary Report.

41. Dice is moving all around the medical room helping with injury supplies to treat me like he's the nurse assistant

42. So then the nurse washes my eye's out with eye-drops but, is telling me how bad of shape my eyeballs are damage.

43. Then shortly afterwards I'm escorted back to my cell [mentally, emotionally and physically] scarred from the vicious abuse of being held down, choked, bent with handcuff's while in handcuff's. by these defendants Richburg, Town, Cuttnach and John Doe's #1 Miller # C. Williams.

44. When I was put back in the same cell my blood was splintered on the walls that same blood stayed on my walls for 3 weeks because I could not get chemicals from Security.

45. Defendant C. Jones is left to observe me cell-front he tells me after it's me and him alone "damn you are F'ed up pretty bad". I told him the bent me with handcuff's.

-7-

46. For 72 hours I was deprived, life, liberty and property and had to sleep on cold-metal bunk with only boxers on causing me to have back problems and extreme pain mentally emotionally and physically without a penal justification to meet the standards of Florida Administrative Code 33-208.002, 33-602.210 and Close Management. <u>See</u> (All Exhibit)

47. Each defendants' report places them present either participating or witnessing the cell-extraction but nobody on the screen of this knows how I got all those hand-cuFF prints ("shoulders, ear, face, neck and back areas. <u>See</u> Diagram of Injurys and camera evidence).

48. The foregoing factual allegations create a genuine issue of material fact and will if proved at trial, support a judgment in my favor, as explained in the brief submitted with this affidavit.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATE: October 21, 2021

NAME: ROBERT SINCLAIR LEE
SANTA ROSA Correctional Institution
5850 EAST MILTON ROAD

- 8 -

<u>Plaintiff's Statement of Disputed Factual Issues</u>

Defendants' have moved for summary judgment on the plaintiff's claims concerning excessive use of force, property restriction, failure to intervene, misuse of power, due process clause, and deliberate indifference. Pursuant to local rules of the court, the plaintiff submits the following list of genuine issues of material <u>facts</u> that require the denial of defendants' motions.

1. Whether the force utilized by the Defendants' against the plaintiff was applied in good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm.

2. Whether the defendants' failed to stop the abuse plaintiff sustained.

3. Whether the plaintiff was served or found guilty of any rule violations.

4. Whether the plaintiff injuries from his own acts of resistance to the defendants' or from their purposeful use of unnecessary force.

5. Whether or not was McCraine suppost to write a incident report just as all the others involved.

6. Whether the plaintiff was laying on the floor on his mattress when defendants' entered his cell.

7. Whether the plaintiff gave up his clothing to the defendants' when strip-search

- 9 -

DATE: October 20, 2021
Robert Sinclair Lee   DC#T15204
SANTA ROSA Correctional Institution
5850 East Milton Road
Milton, Florida   32583-7914


Plaintiffs Memorandum in Opposition to Defendants' Summary
Judgment Motion

This is a § 1983 civil action filed by a prisoner at
Santa Rosa Correctional Institution seeking damages, a
declaratory judgment, and any other relief based on
the excessive force, the denial of due process violation,
failure to interve, misuse of power and deliberate indifference
Defendants' have filed a partial motion for summary judgment
as to the plaintiff's use of force claim against defendants'
McCerine, Dice, Town, Boatwright, Jones, Cattunch, and Richburg arguing
that their conduct did not violate the Plaintiff's Constitutional
Rights.

STATEMENT OF FACTS

The plaintiffs affidavit submitted in response to the defendants'
motion states that on the evening of September 4, 2019, these
seven defendants' [organized] an illegal use of force. Although he
had questioned the previous order given, the defendants did
not justify any of their actions cause plaintiff never
was found guilty of any rules of Florida's Department of
Corrections. After being gassed with chemical agents, he complied
or trayed to comply to the verbal orders only to be forced into
being physically beaten with handcuff's, choked, kicked and
both eyes clawed out with finger's of 2 of the defendants',

-10-

inflicting substantial injuries including a swapped right thumb and finger. The defendants' reports, answer to interrogatories tell different stories. The Defendant whom was lead supervisor took it upon herself not to write a incident report as all the other's on the scene of this chemical agents and cell-extraction. Then all reports stated a disciplinary report was written but plaintiff never was served or put on notice of any violation(s) of the Florida Department of Corrections. Defendants Mccraine, Dice, Richburg, Town, Cathwith, Jones, and Boatwright arguing that their conduct did not violate the Constitution.


## STATEMENT OF FACTS


The Plaintiff's Affidavit submitted in response to the defendant's partial ~~summary~~ motion for summary judgment states that on the evening of September 4, 2019, these seven defendants organized an illegal use of force to deprive plaintiff of property (personal) using excessive & malicious force without justifying their actions. After being beaten then told by the supervisor that if I laid down I would not recieve a disciplinary report, which is against all rules and regulations. Then placed in the same cell with my blood splashed on the walls. Defendants' told me I'd have to do 72 hours on property restriction as punishment. These defendants' claim that they are entitled to Qualified Immunity on all claims challenged as they did not act unreasonably towards Plaintiff and did not violate any of Plaintiff's constitutional rights.

- 11 -

Arugment

These are genuine issue of material Fact that Preclude Summary Judgment for the Defendants' on the Plaintiff's Excessive Force Claim

Summary Judgment is to be granted only if the record before the court shows "that there is no ~~genuine genuine~~ genuine issue as to any material Fact and that the moving party is entitled to a judgment as a matter of Law". Rule 56(c), Fed. R. Civ. Pro. A "material" fact is one that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.ct. 2505 (1986).

The affidavit of the plaintiff and the defendants' are squarely contradictory as to what type force was used, when it was used, and why it was used. The allegations in the plaintiff's affidavit portray a completely needless use of force against an inmate who never did recieve any administrative punishment as due process requires [Florida Administrative Code] : each defendants' incident report "one" disciplinary Report was written. —

Force is malicious and sadistic when no disciplinary rationale or penal purpose justifies it. A wanton and unnecessary infliction of harm for no legitimate purpose always violates U.S. Const. VIII .Amend. However, a ~~force~~ de minimus use of force does not qualify as "wanton and unnecessary" unless it is the sort repugnant to the conscience of mankind.

— The defendants' use of force reports are all a cover-up [I] never resisted down in the position I was in I tried to ball-up and could not move for so long it felt painful and it's hard to forget.

Defendants' claim that they used only minimums force to control the

-12-

the prisoner whom they say was resisting orders given.

There is clearly a genuine issue of fact. The factual dispute only material. Under the governing law, whether the force by these prison staff violates the Eighth Amendment ~~depatdants~~ depends on whether it was "applied in good faith effort to maintain or restore discipline or maliciously and sadisticly to cause harm." Hudson v. Millian, 503 U.S. 1, 5-6, 112 S.Ct. 995 (1992); Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986).

The fact that force was used when unnecessary, or in a ~~matter~~ manner excessive to any need, is in itself evidence that the defendants' were acting "maliciously and ~~sadistically~~ sadistically to cause harm" Miller v. Leathers, 913 F.2d 1085, 1098 (4th Cir. 1990); Oliver v. Collins, 914 F.2d 56, 59 (5th Cir. 1990); Orwat v. Maloney, 360 F. Supp. 2d 146, 153-54 (D. Mass 2005)

U.S. Const. amend. VIII protects convicted prisoners from the use of excessive force while in prison. The core inquiry for U.S. Const. amend. VIII excessive force is whether force was applied in good-faith effort to maintain and restore discipline, or maliciously and sadiscally for the very purpose of causing harm. Force is malicious and sadistical when no disciplinary rationale or penal purpose justifies it. A wanton and unnecessary infliction of harm for no legitimate purpose always violates U.S. Const. amend. VIII. However, a de minimis use of physical force does not qualify as "wanton and unnecessary" unless it is the sort repugent to the conscience of mankind.

-13-

## Argument 2
## Handcuff's Used As Brass-Knuckles
## Injury's

(Richburg, Cattnach and Tona) ~~so~~ sworn statements taken immediately following the incident state that their use of force was reasonable and necessary under the circumstances. Defendant Sgt. Richburg states in his Use of Force Incident Report: "Inmate Lee refused all orders to recieve his required cool water decontamination shower, and refused all verbal orders to submit to a strip search... Officer Cattnach and I then utilized downward pressure and pulling force on Lee's upper extremities to place his hands behind his back and secure inmate Lee in wrist restraints." Ex.C

As shown on Lee's upper extremities where both Richburg and Cattnach swear that they were positioned (the injuries) Ex. C 1 A

Assuming as true that Defendants' Cattnach and Richburg used handcuff's like brass-knuckles, and assuming that Richburg stated; thats what happens to inmates who don't cooperate," Plaintiff has made a plausible showing that both Cattnach and Richburg actions were purposeful. See Kingsley, 135 S.ct. 2472-73.

With respect to whether the force was excessive, it is important to remember that the extent of injuries, as documented, are extensive. Furthermore although the used for the application of force was unnecessary while plaintiff did comply to strip — search and once the cell-extraction team was forced on Plaintiff, he was in a non-threatening position on his stomach with his hands behind his head. Force at that point was unnecessary, improper and excessive. Plaintiff has shown that

-14-

the need for the application of force was nonexistent. Thus, this factor weighs in Plaintiff's Favor.

In evaluating the relationship between the need for force and the force used, the force alleged was disproportionate. As an initial matter, because Plaintiff is assumed to have submitted to authority.

More importantly, the use of handcuffs as brass-Knuckles to punch or other-wise strike inmates is at least for the purposes of the pleadings stage, disproportionate. See e.g., Johnston v Lucas, 786 F.2d 1254, 1256-57 (5th Cir. 1986) striking an inmate with handcuffs like brass-Knuckles amounted to excessive force during summary judgment : Drumgo v. Brown, 525 Fed. App'x 125, 127 (3rd Cir. 2013)( beating an inmate with handcuffs that were used like brass-Knuckles was enough to survive summary judgment on excessive force claim). See Lavey v. Greenfield, 87 F. Supp. 2d 1210, 1216 (D. Kan. 2000)( hitting an inmate with Handcuffs as if they were brass-Knuckles survives summary judgment on an excessive force claim); Wilson v. Thomas, Report and Recommendation, Case No. 5:15 cv 193-CJK, 2017 U.S. Dist Lexis 98440, 2017 WL 2771524, at *2 (N.D. Fla. April 27, 2017) report and recommendation adopted, No. 515CV00193 WTHCJK, 2017 U.S. Dist Lexis 98342, 2017 WL 2766447 (N.D. Fla. June 26, 2017)( punching an inmate with handcuffs used as brass Knuckles plausibly states an Eighth Amendment excessive force claim at the pleading stage).

The physical injury requirement applies to a federal claim, including const. claims. Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000).

Plaintiff has requested compensatory, punitive, and nominal damages from the defendants and is entitled to the said relief based on the following facts:

-15-

#1 PlaintiFF has filEd this Federal Civil Action;

#2 PlaintiFF is a prisoner confined in prison or other correctional facility;

#3 PlaintiFF seeks damages for mental and emotional injury suffered while in custody;

#4 PlaintiFF has made a prior showing of "physical injuries",

Defendants' try to assert that what they did was responsible, but, 42 U.S.C. § 1997(e)(e) does not define "physical injuries" the 11th Circuit has held that to satisfy the statute, the physical injury must be more than minimal, but need not be significant, and went on to cite several cases. It should be noted that although this may be the case, the meaning of physical injury might be clarified by 28 U.S.C. § 242, a Federal statute makes it a crime for someone acting under color of state law to deprive another person of federal civil rights, and requires a showing of [bodily injury] before someone who violates the statute can be sentenced to more than one year in prison.

A correctional officer acts unconstitionally by beating a prisoner for no legitimate reason, regardless of the extent of injury the prisoner suffers. [A] de minimus use of force is not actionable, but a substantial use of unnecessary force for the purpose of inflicting pain, not for a legitimate reason, is actionable even when it results in only de minimus injury. See Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S.ct. 1175, 175 L.Ed 2d 995 (2010); Hudson v McMillian, 503 U.S. 1, 7, 112 S.ct. 995, 117, L.Ed. 2d 156 (1992).

-16-

## Argument 2

The defendants' violated Plaintiffs' Due Process of Law by not writing a disciplinary Report to Justify the Actions

When prison officials subject inmates to "atypical and significant hardship — in relation to the ordinary incidents of prison life" they must observe the safeguards of due process. Sandin v. Conner, 512 U.S. 472, 115 S.Ct. 2293 (1995). Prisoner have a liberty in not being so confined unless he has recieved due process. Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000). Palmer v. Richards 364 F.3d 60, 64-5 (2d Cir. 2000).

## A. The Refusal to Call the Plaintiffs Witnesses Denied Due Process

Prisoners have the right to call witnesses when it is not "unduly hazardous to institutional safety or correctional goals." Wolf v. McDonnell, 418 U.S. at 566. Witnesses may be denied for reasons such as "irrelevance, lack of necessity, or the hazards presented in individual cases". Id Here in this case no hearing or witnesses was even considered. It is a standard prison procedure to write a disciplinary report on all inmates to establish that they did break the rules of Florida Administrative Code.

This justification, therefore, amounts to the kind of blanket policy of denying witnesses or types of witnesses that courts have repeatedly struck down as violating due process. Whitlock v. Johnson, 153 F.3d 380, 388 (7th Cir. 1988), Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); King v. Wells, 760 F.2d 89, 93 (6th Cir. 1985); McCann v. Coughlin, 698 F.2d 112, 122-23 (2d Cir. 1983).

The witnesses were not irrelevant or unnecessary. They were in a position to see and hear all or part of the use of force. Had they been called, they could have testified that when the officers came to the plaintiffs cell, he was not causing a disturbance, and that they did tell Plaintiff "they didn't



need a reason to put him on property restriction". Witnesses
would have testified that plaintiff was bent with hand-
restraints by the defendants.

Courts have repeatedly held that the refusal to call witnesses
with personal knowledge of the incident in question denied
due process. This is especially so when a prisoner "faces
a credibility problems trying to disprove the charge of
a prison guard". Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir.
1991). And when the hearing officer refuses to hear any
witnesses corroborating the accused inmate, Graham v. Baughman,
772 F.2d 441, 445 (8th Cir. 1985); Green v. Nelson, 442 F.
Supp. 1047, 1057 (D. Conn. 1977). both of which apply to
this case.

## B. The Failure to Provide a Meaningful Explanation of the Finding of Guilt Denied Due Process

Prisoners who are found guilty of disciplinary charges
are entitled to a "written statement by the factfinders as
to the evidence relied on and the reasons' for the disciplinary
action." Wolff v. McDonnell, 418 U.S. at 565 (quoting Morrissey v.
Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593 (1972)). Several courts
have held that the practice of simply adopting the report of
staff members with no further explanation denys due process.
Scrugg v. Jordan, 485 F.3d 934, 941 (7th Cir. 2007)(quoting
Chavis v. Rowe, 643 F.2d 1281, 1287 (7th Cir. 1981))("Without
a detailed statement of the [disciplinary] Committee's findings
and conclusions, a reviewing court (or agency) cannot determine
whether the finding of guilt was based on substantial evidence
or whether it was sufficiently arbitrary so as to be a denial
of the inmates due process rights.") King v. Wells, 760 F.2d 89,
93 (6th Cir. 1985); Dyson v. Kocik, 689 F.2d 466, 467 (3rd Cir. 1982).
Prison officials must provide some degree of explanation for the
conclusions they reach.

Defendant Dice even admits in his answer to interrogatories

-18-

"Force can not be used a punishment". There's always a denial of due process without penal or disciplinary action to justify the use of Force.

## C. In the Absence of a Disciplinary Report and Finding of guilt, Unsupported by Any Evidence, Denied Due Process

Due Process forbids officials to convict prisoners of disciplinary offenses unless there is "some evidence" to support the charges. Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985). In this case, there is no hearing, no disciplinary report to support that Plaintiff was quelling a disturbance or disobeying a verbal order.

The only evidence is the incident reports without no D.R. or finding of guilt by a hearing Team.

There is nothing in any of the defendants reports to support the conclusion that the plaintiff quelled a disturbance.

In the absence of this finding, the use of Force could not be justified violating Plaintiff's due process.

CONCLUSION

For the Foregoing reasons, the defendants motion for summary Judgment should be denied.

DATE: October 22, 2021

NAME: Robert Sinchie Lee
SANTA ROSA C.I.
5850 East Milton Road
Milton, FLA. 32583-

-19-

Argument 3
Supervisor liability:
McCraine did not write
Incident Report

In reviewing all incident reports McCraine signed off as everything was true and correct, but, you can see that each official present wrote individual reports. See Ex. A,B,C,D,E,F, G,H,I,.


Official Micheal Eiland's Report (Ex. F) Shift supervisor Lieutenant T McCraine comment: This use of force was necessary to quell the disturbance Inmate Lee was creating and to overcome his physical resistance to lawful commands. Inmate's Lee's DC4-650 B (Chemical Agent Risk Assessment form) stated that, based on a review of the medical record at the time of his pre-confinement health assessment. Inmate Lee had _____ that would be exacerbated by the use of chemical agents, and was verified by LPN Sharp. Due to Inmate Lee being a Mental Health Grade of — Crisis Intervention was necessary and was conducted by Mental Health Professional Adams with negative results. Officer M. Eiland administered two applications of chemical agents OC and one application of chemical agents CS. Following the application of chemical agents. Inmate Lee refused orders to recieve a cool Water Shower. At approximately 2:45 pm RN Jobst explained the importance of recieving a cool water decontamination shower and Inmate Lee continued to refuse all orders. Authorization for the use of the Forced Cell Extraction Team was recieved.

Furthermore, it is clear that Defendant LT. McCraine recieved to use force from Major Bradley Oakes on this date:

"On September 4, 2019, at approximately 2:25 pm, I was ~~contacted~~ contacted by Lieutenant McCraine concerning Inmate Lee, Robert DC#

TIS204 _ Lieutenant McCraine informed me that Inmate Lee continued to refused orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on property restriction following two applications of chemical agents. I authorized the use of chemical agent CS if necessary, to overcome Inmate Lee's physical resistance to lawful commands.

On September 4, 2019, at approximately 2:40 pm, I was contacted by Lieutenant McCraine informed me that, following two applications of chemical agents OC, and one application of chemical agent CS, Inmate Lee was refused (sic) orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on property restrictions. I authorized the use of the Forced Cell Extraction Team, if necessary, to overcome Inmate Lee's physical resistance to lawful commands". Ex B.

Then on the M'ins Incident Report See Ex A.
There's no proof that Lieutenant Tyler McCraine was even present as supervisor of the use of force incident # 000943999

A fatal mistake like this makes the whole event void and against all policy and procedures of Chapter 33-602.210 see as proof Ex. AA

Florida Statute Section 944.35 authorizes the use of force in correctional facilities under certain conditions:

(1) (a) An employee of the department is authorized to apply physical force upon an inmate only when and to the extent that it is reasonably necessary:

-21-

1. To defend him or herself or another against such other imminent use of unlawful force;

2. To prevent a person from escaping from a state correctional Facilities when the officer reasonably believes that person is unlawfully detained in such institution;

3. To prevent damage to property;

4. To quell a disturbance;

5. To overcome physical resistance to a lawful command; or

6. To administer medical treatment only by or under the supervision of a physician or his or her designee and only;

A. When treatment is necessary to protect the health of other persons, as in the case of contagious or venereal diseases; or

B. When treatment is offered in satisfaction of a duty to protect the inmate against self - injury or death.

§ 944.35 (1), Fla. Stat. (2017)

The Authorization for the Organized Use of Force was not in accordance with the STATUTE or RULES OF FLORIDA Dept. of Corrections

There is clearly a genuine issue of fact. The factual dispute is also material. Under the governing law, whether the use of force by prison staff violates the Eighth Amendment depends on whether it was "applied in good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm". Hudson v. McMillian, 503 U.S. 1, 5-6, 112 S.Ct. 995 (1992); Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986).

The fact that force was used when UNNECESSARY, or in a manner excessive to any need, is in itself evidence that the defendants were acting "maliciously and sadistically to cause harm". Miller v. Leathers, 913 F.2d 1085, 1088 (4th Cir. 1990); Oliver v. Collins, 914 F.2d 56, 59 (5th Cir. 1990); Orwat v. Maloney, 360 F.Supp. 2d 146, 153-54 (D. Mass. 2005).

A reasonably jury would find for the plaintiff based on the facts in the plaintiff's declaration, and summary judgment must therefore be denied. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment should be denied.

DATE: October 22, 2021
ROBERT SINCLAIR LEE
5850 EAST MILTON ROAD
MILTON, FLA. 32583.

-23-

## Argument 4
### Defendants Failed To Intervene to Stop The CRUEL AND UNUSUAL PUNISHMENT

Each defendant admits in their reports that either they participated or witnessed the cell-extraction and could see and hear Inmate Lee yell for them Richburg, Town and Richburg Failing to ~~Interven~~ Intervene.

"IF an officer, whether ~~supervisory~~ or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in their presence, the officers is directly liable under section 1983." **Ensley v. Soper** 142 F. 3d ~~1403~~, 1407 (11th Cir. 1998) (**Byrd v. Clark**, 783 F. 2d 1002, 1007 (11th Cir. 1986) Video of the Use OF FORCE showed Dice and McCraine in the doorway while Town, Richburg, Catterich, Williams and Miller malicious battered and assaulted me.

In order to be liable for Failing to intervene when others are committing constitutional violations, an officer must be "in a position" to intervene, ~~Bree~~ Ensley supra. Aside from being in a position to intervene, there must be a failure to take "reasonable steps to protect" the victim from ~~a~~ another's excessive force. **Fundiller v. City of Cooper City**, 777 F. 2d 1436, 1442 (11th Cir. 1985)

Richburg's comment "that's what happens when inmates don't like to cooperate" shows that they all were "objectively cruel" and failed to act to remedy the situation. See General Affidavit

-24-

## Defendants' Defense of Qualified Immunity

Due to the actions took by these officals judgment should not protect them it needs to be decided by a jury:

When public or state officals move for summary judgment on the ground that he or she enjoys immunity from suit arising under either state or federal law, and the record conclusively demonstrates that the offical is entitled to immunity, it is a departure from the essential requirements of law to deny it. However, when a court denies summary judgment in the face of disputed issues of material facts, it commits no legal error, let alone a departure from the essential requirements law. In this case at hand, Summary judgment shall be denied and processed to Trial by Jury.

## Conclusion

~~Appearance~~ For the foregoing reasons, the defendants motion for summary judgment should be denied.

Robert Sinclair Lee
Signature of Plaintiff

Date: 10-22-21

## Certificate of Service

I Hereby Certify that a true and correct copy of the for going Response To Defendant's Partial Motion For Summary Judgment was furnished by U.S. Mail to: US District Court, Northern District Court, 1 North Palafox St., Pensacola, FLA 32507

26

Robert Sinclair Lee
#T15204

United States District Court
Northern District Court of Florida
Pensacola Division

Robert Sinclair Lee
DC#T15204 ,
Plaintiff

V.

Lieutenant T. McCraine Et. Al;

<u>Index of Appendix</u>

| Exhibit A | MIUS Incident Report | |
| Exhibit B | Justification for Use of Force | Major Oakis |
| Exhibit C | Use of Force Report | Sgt G. Richburg |
| Exhibit C1A | Diagram of Injury | K. Jobst |
| Exhibit D | Use of Force Report | C. Cathrath |
| Exhibit E | Use of Force Report | M. Tona |
| Exhibit F | Use of Force Report | M. Eiland |
| Exhibit G | Use of Force Report | D. Dice |
| Exhibit H | Use of Force Report | J. Boatwright |
| Exhibit I | Use of Force Report | C. Jones |
| Exhibit IB | USE OF FORCE VIDEO | |
| Exhibit J | Fixed wing video | |
| Exhibit * CC | Florida Administrative Code | 33-602.210 |
| Exhibit CCC | Request Form  NO DIR. WROTE | |
| Exhibit CC | Use of Force | 33-602.210 |

/s/ Robert Sinclair Lee
    Pro Se

DATE: 10/22/21

```
09/06/2019              FLORIDA DEPARTMENT OF CORRECTIONS              PAGE:
  MINO101                   MINS INCIDENT REPORT                    TIME 07:0
```

```
PREPARED BY: UNRUH, SAMANTHA F.              INCIDENT NUMBER: 0000948999
INCIDENT TYPE: 27E QUELL A DISTURBANCE       STATUS OF INCIDENT: ENTERED
REPORT DATE:   09/05/2019                    REPORT TIME:   13:10
INCIDENT DATE: 09/04/2019                    INCIDENT TIME: 13:55
REPORTING FACILITY: 119 SANTA ROSA C.I.      INCIDENT REGION: 1
INCIDENT FACILITY : 119 SANTA ROSA C.I.      INCIDENT IG OFFICE: 01
INCIDENT LOCATION: 63 CONFINEMENT            DAY CODE: 3      SHIFT CODE: 5
DATE REPORTED TO MANAGEMENT: 09/04/2019      W-B REVIEW BY:
IG NUMBER:                                   UOF NUMBER:
INJURIES: ⬛        STG/STI INVOLVEMENT: N    PHYSICAL EVIDENCE RECOVERED: Y
USE OF FORCE: Y     WEAPONS USED: N          INCIDENT VIDEO TAPED: Y
ELECTRONIC RESTRAINING DEVICES: N            CHEMICAL AGENTS USED: Y
EVIDENCE LOC: TEMP STORAGE LOCATIONS         SEND TO IG OFFICE: Y
DORM/WING/FLOOR/CELL/BED: G-1-2-11-          SPONTANEOUS UOF: N
FORCE TYPE: PHY: Y   CHM: Y   MED RSTR: N    VIDEO: HANDHELD: Y   WING: Y
```

```
        NAME                 TITLE          BIRTHDATE  R S   ID NUMBER
-------------------- ------------------- ---------- - - ----------------
PARTICIPANT (S)
  WILLIAMS, CHRISTOPHE CORRECTIONAL OFFICER SE 07/29/1992 1 1 82203
  TONA, MICHAEL C.     CORRECTIONAL OFFICER    08/11/1992 1 1 106380
  EILAND, MICHAEL E.   CORRECTIONAL OFFICER    01/20/1958 1 1 6252
  CATTNACH, CODY W.    CORRECTIONAL OFFICER    04/27/1994 1 1 98424
  MILLER, TYLER R.     CORRECTIONAL OFFICER    06/03/1993 1 1 109527
  RICHBURG, GLENN A.   CORRECTIONAL OFFICER SE 11/20/1991 1 1 72304
SUBJECT (S)
  LEE, ROBERT S.       ACTIVE INMATE           01/14/1981 2 1 T15204
WITNESSES (S)
  DICE, DREW A.        CORRECTIONAL OFFICER LI 02/15/1993 1 1 83596
  BOATWRIGHT, JUSTIN W CORRECTIONAL OFFICER    11/19/1996 1 1 92882
  JONES, COREY N.      CORRECTIONAL OFFICER    02/18/1998 1 1 109643
```

```
CONTRABAND RECOVERED          TYPE    POSSESS    QUANTITY      UNIT MSR
-------------------------    ------  -------   ----------     --------
```

```
MEDICAL DEPT. DESCRIPTION OF INJURIES:
     INMATE LEE INJURIES; STRIPE BRUISING TO RIGHT AND LEFT
     SHOULDER AND TRICEP AREA, BRUISING TO RIGHT JAW AND NECK
     AREA, SCRAPE ON TO OF THE LEFT SIDE OF HEAD AND SCRATCHES TO
     HIS LEFT SHOULDER, LEFT EYE SWOLLEN, LEFT INNER EAR
     LACERATION.
```

**EXHIBIT**

*A*

```
09/06/2019                  FLORIDA DEPARTMENT OF CORRECTIONS              PAGE:
  MINO101                      MINS INCIDENT REPORT                     TIME 07:0
```

DESCRIPTION OF INCIDENT:
        ON SEPTEMBER 4, 2019 OFC EILAND REPORTED USING ORGANIZED
        CHEMICAL FORCE DUE TO INMATE LEE CREATING A DISTURBANCE AND
        DISRUPTING THE NORMAL OPERATIONS OF THE DORMITORY. INMATE
        LEE REFUSED ALL ORDERS GIVEN TO CEASE CREATING A
        DISTURBANCE. OFC EILAND ADMINISTERED ONE APPLICATION OF
        CHEMICAL AGENTS OC CONSISTING OF THREE ONE SECOND BURSTS
        INTO CELL G1211 STRIKING INMATE LEE. INMATE LEE CONTINUED TO
        REFUSE ALL ORDERS. OFC EILAND ADMINISTERED ANOTHER
        APPLICATION OF CHEMICAL AGENTS OC INTO CELL G1211 STRIKING
        INMATE LEE. INMATE LEE CONTINUED REFUSING TO COMPLY WITH
        ORDERS. OFC EILAND ADMINISTERED ONE APPLICATION OF CHEMICAL
        AGENTS CS INTO CELL G1211. INMATE LEE REFUSED TO COMPLY WITH
        ORDERS TO EXIT THE CELL FOR A COOL WATER SHOWER. THE FORCED
        CELL EXTRACTION TEAM WAS UTILIZED. CELL EXTRACTION TEAM
        MEMBERS; OFC MILLER, SGT RICHBURG, OFC CATTNACH, OFC TONA,
        SGT WILLIAMS ENTERED CELL G1211 AND UTILIZED PHYSICAL FORCE
        TO PLACE RESTRAINTS ON INMATE LEE. ONCE INMATE LEE WAS
        RESTRAINED ALL FORCE CEASED. THE DUTY WARDEN AND EAC WERE
        NOTIFIED.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**AUTHORIZATION FOR USE OF FORCE**

Institution/Facility:  Santa Rosa Correctional Institution – Main Unit

Inmate Name:  Lee, Robert                    Inmate Number:  T15204

**Justification for Use of Force:**

On September 4, 2019, at approximately 1:55pm, I was contacted by Lieutenant Tyler McCranie concerning Inmate Lee, Robert DC#T15204. Lieutenant McCranie advised me that Inmate Lee was present in his assigned cell, G1211, refusing to submit to a strip search, submit to wrist restraints and exit his cell for a cell search and to be placed on property restriction. I was informed that due to Inmate Lee's mental health level of ███, CIT was necessary and conducted by Mental Health Professional Adams with negative results. Inmate Lee's dormitory file was reviewed and the DC4-650B (Chemical Agent Risk Assessment form) stated that, based on a review of the medical record at the time of his pre-confinement health assessment, Inmate Lee had ██████████████ ████████ that would be exacerbated by the use of chemical restraint agents, and verified by LPN Sharp. I authorized the organized use of chemical agent OC, if necessary, to quell the disturbance Inmate Lee was creating and to overcome his physical resistance to lawful commands.

On September 4, 2019, at approximately 2:25pm, I was contacted by Lieutenant Tyler McCranie concerning Inmate Lee, Robert DC# T15204. Lieutenant McCranie informed me that Inmate Lee continued to refuse orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on property restriction following two applications of chemical agents. I authorized the use of chemical agent CS if necessary, to overcome Inmate Lee's physical resistance to lawful commands.

On September 4, 2019, at approximately 2:40pm, I was contacted by Lieutenant McCranie concerning Inmate Lee. Lieutenant McCranie informed me that, following two applications of chemical agent OC, and one application of chemical agent CS, Inmate Lee was refuse orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on property restriction. I authorized the use of the Forced Cell Extraction Team, if necessary, to overcome Inmate Lee's physical resistance to lawful commands.

| | |
|---|---|
| Individual Authorizing Use of Force | Bradley Oakes |
| | (Print or Type Full Name) |
| Title of Authorizing Individual | Major |
| Signature | |
| Date Force Was Authorized | September 4, 2019 |
| Date Force Was Used | September 4, 2019 |
| | |
| Individual Receiving Use of Force Authorization | Tyler McCranie |
| | (Print or Type Full Name) |
| Title of Individual Receiving Authorization | Lieutenant |
| Signature | |
| Individual Using Force | Officer Michael Eiland |
| | (Print or Type Full Name) |
| Individual Using Force | Officer Tyler Miller |
| | (Print or Type Full Name) |
| Individual Using Force | Sergeant Glen Richburg |
| | (Print or Type Full Name) |
| Individual Using Force | Officer Cody Cattnach |
| | (Print or Type Full Name) |
| Individual Using Force | Officer Michael Tonn |
| | (Print or Type Full Name) |
| Individual Using Force | Sergeant Christopher Williams |
| | (Print or Type Full Name) |

(Use additional sheets if necessary)
DC6-232 (Revised 9-99)

DC6-232 (Revised 9-99)

**EXHIBIT**

B

DEPARTMENT OF CORRECTIONS

## USE OF FORCE INCIDENT REPORT

**Reporting Institution:** Santa Rosa Correctional Institution

**Reporting Employee:** Sergeant Glenn Richburg

**Employee ID Number:** 72304

**Person(s) Involved:** Inmate Lee, Robert DC#T15204

**Incident Report Number:** 119-19-318168

**PREA Number:** _____

**Date of Incident:** September 4, 2019

**Time of Incident:** Approximately 2:42pm

**Witness(es):** See attached DC6-230

| | |
|---|---|
| Control Room Log Entry Made: ☒ Yes ☐ No | Disciplinary Report Initiated: ☒ Yes ☐ No |
| Inmate Placed in Confinement: ☐ Yes ☒ No | Work Order Initiated: ☐ Yes ☒ No |
| Duty Warden Notified: ☒ Yes ☐ No Time: 3:55pm | MINS Initiated: ☐ Yes ☒ No |
| EAC Notified: ☒ Yes ☐ No Time: 4:08pm | Duty Officer Name: Pate 2019-09-72420 |
| Supporting Documents Attached: Yes | |

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned as the E-Dormitory Close Management Housing Sergeant at Santa Rosa Correctional Institution – Main Unit. At approximately 2:42pm, I was instructed to report to the Cell Extraction Ready Room and don cell extraction gear, and report to G-Dormitory due to a possible Forced Cell Extraction involving Inmate Lee, Robert DC#T15204. At approximately 2:48pm, Officer Corey Jones initiated video recording and I introduced myself as the Number Two Team Member, along with my area of responsibilities. At approximately 2:51pm, with the Cell Extraction Team present at the front of cell G1211, Inmate Lee refused all orders to receive his required cool water decontamination shower, and refused all verbal orders to submit to a strip search, wrist restraints and exit the cell to be placed on property restriction. Officer Miller utilized downward pressure with the shield to redirect Inmate Lee to a prone position on the floor. Once on the ground, Inmate Lee continued to resist staff. Officer Cattnach and I then utilized downward pressure and pulling force on Inmate Lee's upper extremities to place his hands behind his back and secure Inmate Lee in wrist restraints. Officer Toon and Sergeant Williams utilized downward pressure on Inmate Lee's lower extremities to gain control of Inmate Lee and secure Inmate Lee in leg restraints. At this time Inmate Lee became compliant and all force ceased. Officer Miller and I escorted Inmate Lee to the cool water decontamination shower and then to the Gulf Dormitory Medical Room then back to his decontaminated cell G1211. I have been trained in force cell extraction.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Sergeant Glenn Richburg
**Reporting Employee's Name (Print)**          **Reporting Employee's Signature**          September 4, 2019
                                                                                            **Date**

**Shift Supervisor / Department Head**
**COMMENT:** Supplemental documentation.

_____
_____
_____
_____

Lieutenant Tyler McCranie
**Shift Supervisor's Name (Print)**          **Shift Supervisor's Signature**          September 4, 2019
                                                                                        **Date**

**REVIEW:** Supplemental

_____
_____
_____
_____

Major Bradley Oakes
**Correctional Officer Chief's Name (Print)**          **Correctional Officer Chief's Signature**          9/5/19
                                                                                                            **Date**

**REVIEW:** Addendum.

EXHIBIT

C

Walker Clemmons, Warden
**Warden's Name (Print)**          **Warden's Signature**          9/20/19
                                                                   **Date**

DC6-210A (Effective 1/18)          Incorporated by Reference in Rule 33-602.210, F.A.C.          Page 1 of 2

### FLORIDA DEPARTMENT OF CORRECTIONS
### OFFICE OF HEALTH SERVICES
### DIAGRAM OF INJURY



Date of occurrence 9/4/19    Time of occurrence 1413·1451

Date injury assessed by medical 9/4/19    Time injury assessed by medical 1510

☐ No injury identified

Description of injury:

~~PUOF w/ Chemical agent @ extraction.~~

K. JOBST, RN
Santa Rosa C.I

Staff Signature

Inmate Name Lee, Robert

DC# 715204        Race/Sex B/M

Date of Birth

Institution SARCI 119

Ex. C1A

This form is not to be amended, revised, or altered without
approval by the Director of Health Services- Administration.

Copies distribution:  White/Health Record   Canary/Inspector General   Pink/Warden or Asst. Warden

DC4-708 (Revised 10/07)

FLORIDA DEPARTMENT OF CORRECTIONS
**EMERGENCY ROOM RECORD**

| Check all that apply: | ☒ Inmate | ☐ Employee | ☐ Visitor |
|---|---|---|---|
| | ☒ Post-Use-of-Force Exam | ☐ Injury | ☐ Physical Altercation |

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: __1413 - 1451__    Time of exam: __1500__

Description of occurrence:

PUDF w/ chemical agent & cell extraction

Post Use of Chemical Agent Instructions: Shower without soap? ☐ N/A ☒ Yes ☐ Refused—☐ educated on importance of showering
☒ Report any difficulty breathing ☒ Remain in upright position ☒ Do Not apply lotion to the skin ☐ Splash cool water to eyes 5-10 minutes

Vital Signs: Temperature __98__ Pulse __82__ Respiration __16__ O2 Sat. __99__ % Blood Pressure __140/85__

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other:

Condition on arrival (check all that apply) ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☒ C/O pain? If checked, where? __see body sheet__ ✓

Examination summary:
Multiple bruises to upper extremities - front/back.
① eye swollen/black, bruise to ② jaw/neck, "scrape" to left upper thigh, ③ inner bottom lobe laceration,
scratches to ① upper back.

Physician notified? ☒ No ☐ Yes   Name: _____ Time: _____

Treatment provided? ☐ No ☒ Yes   If yes, describe: cleansed wounds w/ cold H2O
shaver, stopped bleeding, gave IBU, Mental health
notified verbally.

Response to Treatment:
Tolerated

Disposition: ☐ Population ☒ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☐ Other (explain):

Discharge Instructions and Education:
Return to Medical if needed

Health Care Provider's Signature and Stamp: K. JOBST, RN   Date/Time: 9/4/19  1510
W. Santiago Miranda Santa Rosa CI
Reviewing Physician's Signature and Stamp: _____   Santa Rosa CI   Date/Time: 9/11/19  3:30
Main/Annex/Work Camp

| Name | Lee, Robert | | **Inmate Distribution:** | White—Health Record |
|---|---|---|---|---|
| DC# | T15204 | Race/Sex B/M | | Canary—Inspector General |
| Date of Birth | | | | Pink—Local Requirements |
| Institution | SARCI CI | | **Employee Distribution:** | White—Safety Officer/Designee |
| | | | | Canary—Employee Copy |
| | | | | Pink—DESTROY |

DC4-701C (Effective 12/12)

Incorporated by Reference in Rule 33-602.210, F.A.C.

DEPARTMENT OF CORRECTIONS

USE OF FORCE INCIDENT REPORT

| | |
|---|---|
| **Reporting Institution:** Santa Rosa Correctional Institution | **Incident Report Number:** 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C |
| **Reporting Employee:** Officer Cody Cattnach | **PREA Number:** |
| **Employee ID Number:** 98424 | **Date of Incident:** September 4, 2019 |
| **Person(s) Involved:** Inmate Lee, Robert DC#T15204 | **Time of Incident:** Approximately 2:42pm |
| | **Witness(es):** See attached DC6-230 |

| | | | |
|---|---|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No | Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Inmate Placed in Confinement: | ☐ Yes ☒ No | Work Order Initiated: | ☐ Yes ☒ No |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 3:55pm | MINS Initiated: | ☒ Yes ☐ No |
| EAC Notified: | ☒ Yes ☐ No Time: 4:08pm | Duty Officer Name: | Pate 2019-09-22420 |
| Supporting Documents Attached | Yes | | |

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned as the Close Management Gulf Dormitory Housing Sergeant at Santa Rosa Correctional Institution – Main Unit. At approximately 2:42pm, I was instructed to report to the Cell Extraction Ready Room and don cell extraction gear, and report to G-Dormitory due to a possible Forced Cell Extraction involving Inmate Lee, Robert DC#T15204. At approximately 2:48pm, Officer Corey Jones initiated video recording and I introduced myself as the Number Three Team Member, along with my area of responsibilities. At approximately 2:51pm, with the Cell Extraction Team present at the front of cell G1211, Inmate Lee refused all orders to receive his required cool water decontamination shower, and refused all verbal orders to submit to a strip search, wrist restraints, and exit the cell to be placed on property restriction. Officer Miller utilized downward pressure with the shield to redirect Inmate Lee to a prone position on the floor. Once on the ground, Inmate Lee continued to resist staff. Sergeant Richburg and myself then utilized downward pressure and pulling force on Inmate Lee's upper extremities to place his hands behind his back and secure Inmate Lee in wrist restraints. Officer Tona and Sergeant Williams utilized downward pressure on Inmate Lee's lower extremities to gain control of Inmate Lee and secure Inmate Lee in leg restraints. At this time Inmate Lee became compliant and all force ceased. I am trained in Force Cell Extraction.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Officer Cody Cattnach
Reporting Employee's Name (Print) _____   _____   September 4, 2019
                                    Reporting Employee's Signature            Date

**Shift Supervisor / Department Head**
**COMMENT:** Supplemental documentation.
_____

Lieutenant Tyler McCranie
Shift Supervisor's Name (Print) _____   _____   September 4, 2019
                                    Shift Supervisor's Signature            Date
**REVIEW:** Supplemental
_____

Major Bradley Oakes
Correctional Officer Chief's Name (Print) _____   _____   9/5/19
                                             Correctional Officer Chief's Signature      Date
**REVIEW:** Addendum
_____

EXHIBIT
D

Walker Clemmons, Warden
Warden's Name (Print) _____   _____   9/20/19
                         Warden's Signature            Date

DC6-210A (Effective 1/18)     Incorporated by Reference in Rule 33-602.210, F.A.C.     Page 1 of 2

## DEPARTMENT OF CORRECTIONS

## USE OF FORCE INCIDENT REPORT

**Reporting Institution:** Santa Rosa Correctional Institution   **Incident Report Number:** 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 D

**Reporting Employee:** Officer Michael Tona   **PREA Number:**

**Employee ID Number:** 106380   **Date of incident:** September 4, 2019

**Person(s) Involved:** Inmate Lee, Robert DC# T15204   **Time of incident:** Approximately 2:42pm

   **Witness(es):** See attached DC6-230

| | | | | |
|---|---|---|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No | | Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Inmate Placed in Confinement: | ☐ Yes ☒ No | | Work Order Initiated: | ☐ Yes ☒ No |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 2:55pm | | MINS Initiated: | ☒ Yes ☐ No |
| EAC Notified: | ☒ Yes ☐ No Time: 4:08pm | | Duty Officer Name: | Pate 2019-09-22420 |
| Supporting Documents Attached | Yes | | | |

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned as the Echo Dormitory Close Management Housing Officer at Santa Rosa Correctional Institution – Main Unit. At approximately 2:00pm, I was instructed to report to the Cell Extraction Ready Room and don cell extraction gear, and report to G-Dormitory due to a possible Forced Cell Extraction involving Inmate Lee, Robert DC# T15204. At approximately 2:48pm, Officer Corey Jones initiated video recording and I introduced myself as the Number Four Team Member, along with my area of responsibility. At approximately 2:51pm, with the Cell Extraction Team present at the front of cell G1211, Inmate Lee refused all orders to receive his required cool water decontamination shower, and refused all verbal orders to submit to a strip search, wrist restraints and exit the cell to be placed on property restriction. Officer Miller utilized downward pressure with the shield to redirect Inmate Lee to a prone position on the floor. Once on the ground, Inmate Lee continued to resist staff. Sergeant Richburg and Officer Cattusch then utilized downward pressure and pulling force on Inmate Lee's upper extremities to place his hands behind his back and secure Inmate Lee in wrist restraints. Sergeant Williams and myself utilized downward pressure on Inmate Lee's lower extremities to gain control of Inmate Lee and secure Inmate Lee in leg restraints. At this time Inmate Lee became compliant and all force ceased. I have been train in Forced Cell Extraction.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Officer Michael Tona   September 4, 2019
**Reporting Employee's Name (Print)**   **Reporting Employee's Signature**   **Date**

**Shift Supervisor / Department Head**
**COMMENT:** Supplemental documentation.

Lieutenant Tyler McCranie   September 4, 2019
**Shift Supervisor's Name (Print)**   **Shift Supervisor's Signature**   **Date**

**REVIEW:** Supplemental.

Major Bradley Oakes   9/5/19
**Correctional Officer Chief's Name (Print)**   **Correctional Officer Chief's Signature**   **Date**

**REVIEW:** Added.

**EXHIBIT**
**E**

Walker Clemmons, Warden   9/20/19
**Warden's Name (Print)**   **Warden's Signature**   **Date**

DC6-210A (Effective 1/18)   Incorporated by Reference in Rule 33-602.210, F.A.C.   Page 1 of 2

## DEPARTMENT OF CORRECTION

### USE OF FORCE INCIDENT REPORT

Reporting Institution: Santa Rosa Correctional Institution          Incident Report Number: 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

Reporting Employee: Officer Michael Eiland          PREA Number: _____

Employee ID Number: 6252          Date of Incident: September 4, 2019

Person(s) Involved: Inmate Lee, Robert DC#T15204          Time of Incident: Approximately 1:55pm

Officer Michael Tona (106380)          Witness(es): See attached DC6-230

| | | | | |
|---|---|---|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No | | Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Inmate Placed in Confinement: | ☐ Yes ☒ No | | Work Order Initiated: | ☐ Yes ☒ No |
| Duty Warden Notified: | ☒ Yes ☐ No Time:3:55pm | | MINS Initiated: | ☒ Yes ☐ No |
| EAC Notified: | ☒ Yes ☐ No Time:4:08pm | | Duty Officer Name: | Page 2019-09-22420 |
| Supporting Documents Attached | Yes | | | |

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned to Santa Rosa Correctional Institution, Main Unit, B-Shift as the Open Population Recreation Officer. At approximately 1:55pm, the utilization of organized force was necessitated as a result of Inmate Lee, Robert DC#T15204 disturbance and disrupting the normal operations of the dormitory and creating a disturbance by refusing to submit to a strip search, submit to wrist restraints and exit his cell for a cell search and to be placed on property restriction for failure to store his state and personal property. Authorization for the utilization of chemical agents was received prior to this organized Use of Force, as outlined in FAC 33-602.210. At approximately 2:02pm, Officer Justin Boatwright initiated video recording procedure and Lieutenant Tyler McCranie provided a brief lead in statement. At approximately 2:04pm, Inmate Lee was issued a final order to comply with orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on property restriction. Inmate Lee refused to submit to wrist restraints. At approximately 2:13pm, I administered one organized application of chemical agent OC.                                                                    (Continued)

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Officer Michael Eiland          _[signature]_          September 4, 2019
Reporting Employee's Name (Print)          Reporting Employee's Signature          Date

**Shift Supervisor / Department Head**
**COMMENT:** This use of force was necessary to quell the disturbance Inmate Lee was creating and to overcome his physical resistance to lawful commands. Inmate Lee's DC4-650B (Chemical Agent Risk Assessment form) stated that, based on a review of the medical record at the time of his pre-confinement health assessment, Inmate Lee had _____ that would be exacerbated by the use of chemical agents, and was verified by LPN Sharp. Due to Inmate Lee being a Mental Health Grade of ___ Crisis Intervention was necessary and was conducted by Mental Health Professional Adams with negative results. Officer Eiland administered two applications of chemical agents OC and one application of chemical agent CS. Following the application of chemical agents, Inmate Lee refused orders to receive a Cool Water Shower. At approximately 2:45pm, RN Joubat explained the importance of receiving a cool water decontamination shower and Inmate Lee continued to refuse all orders. Authorization for the use of the Forced Cell Extraction Team was received.                                                                    (continued)

Lieutenant Tyler McCranie          _[signature]_          September 4, 2019
Shift Supervisor's Name (Print)          Shift Supervisor's Signature          Date

**REVIEW:** _This packet along with all related videos have been reviewed and appears to be in compliance with the rules governing Use of Force found in Chapter 33-602.210. The translated video contains the video of an unrelated use of force as well as the booking of this inmate. It was flagged separately and has no relevance to this use of force. The files could not be corrected due to the video file being deleted from the unrelated camera._

MBO  5/16

Major Bradley Oakes | Major N.C.G          _[signature]_          5/17/19
Correctional Officer Chief's Name (Print)          Correctional Officer Chief's Signature          Date

**REVIEW:** _The documentation in this packet appears to be in compliance with Chapter 33-602.210. All video footage reviewed by Unit, Review._

Walker Clemmons, Warden          _A. Toli for_          9/20/19
Warden's Name (Print)          Warden's Signature          Date

```
┌─────────────────────┐
│   EXHIBIT           │
│  F                  │
│ _____         │
└─────────────────────┘
```

DC6-210A (Effective 1/18)          Inc_____ 210, F.A.C.          Page 1 of 2

**DETAILS OF INCIDENT (cont'd):** consisting of three one-second bursts, into cell G1211, at Inmate Lee. At approximately 2:21pm, I administered one organized application of chemical agent OC, consisting of three one-second bursts, into cell G1211, at Inmate Lee. During these applications, Inmate Lee utilized his personal and state issued property to defeat the effects of chemical agents. Following two applications of chemical agent OC, Inmate Lee continued to refuse all orders to submit to restraints and exit his cell. At approximately 2:31pm, I then administered one application of chemical agent CS, consisting of three one-second bursts, into cell G1211 at Inmate Lee. At this time my involvement in this Organized Use of Force ended. I am trained in the use of chemical agents. My certification expires 09/19. I utilized the minimum amount of force necessary to bring Inmate Lee into compliance with lawful orders.

_____
_____
_____
_____
_____
_____

**Shift Supervisor / Department Head**
**COMMENT (cont'd):** This use of force was necessary to quell the disturbance Inmate Lee was creating and to overcome his physical resistance to lawful commands. At approximately 2:55pm, due to Inmate Lee's non-compliant behavior by refusing to exit his cell for a Cool Water Shower, Inmate Lee was forced showered. At approximately 2:59pm, Inmate Lee received clean boxers, and a post Use of Force medical examination by RN Jaubert with these injuries noted: ███████████████████████████████████████████ and ████████████████████████████████████. ███████ ███ ██ Inmate ██████████████████████████████. All participating staff involved received a post use of force examination with ██ injuries noted. Inmate Lee will receive a Disciplinary Report for 6-1: Disobeying a verbal or written order. DW Major Bradley Oakes was notified at the conclusion of this incident. EAC Duty Officer Pate was notified and assigned report number 2019-09-22420. Upon review of the handheld video camera footage of the use of Force Cell Extraction, Inmate Lee made an allegation of excessive force by staff striking him in the face with hand restraints. At approximately, 3:14pm, Inmate Lee was returned to his decontaminated cell on property restriction for utilizing his state and personal property in an attempt to defeat the effects of chemical agents. Forward to the Correctional Officer Chief for further review.

_____
_____

**REVIEW (cont'd):** _____
_____
_____
_____
_____
_____
_____
_____
_____

**REVIEW (cont'd):** _____
_____
_____
_____
_____
_____
_____
_____
_____

Supporting Documents Attached __ ___ ____

DC6-210A (Effective 1/18)        Incorporated by Reference in Rule 33-602.210, F.A.C.                Page 2 of 2

DEPARTMENT OF CORRECTION

## USE OF FORCE INCIDENT REPORT

| | |
|---|---|
| **Reporting Institution:** | Santa Rosa Correctional Institution |
| **Reporting Employee:** | Lieutenant Drew Dice |
| **Employee ID Number:** | 83596 |
| **Person(s) Involved:** | Inmate Lee, Robert DC#T15204 |

| | |
|---|---|
| **Incident Report Number:** | 119-19-31886 I |
| **PREA Number:** | |
| **Date of Incident:** | September 4, 2019 |
| **Time of Incident:** | Approximately 2:02pm |
| **Witness(es):** | See attached DC6-230 |

| | |
|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No |
| Inmate Placed in Confinement: | ☐ Yes ☒ No |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 3:55pm |
| EAC Notified: | ☒ Yes ☐ No Time: 4:08pm |
| Supporting Documents Attached | Yes |

| | |
|---|---|
| Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Work Order Initiated: | ☐ Yes ☒ No |
| MINS Initiated: | ☒ Yes ☐ No |
| Duty Officer Name: | Pate 2019-09-22420 |

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned as the B-Shift Assistant Shift Supervisor at Santa Rosa Correctional Institution – Main Unit. At approximately 1:55pm, I was present in G-Dormitory during an organized chemical agent and subsequent forced cell extraction use of force involving Inmate Lee, Robert DC#T15204. I remained present in the housing unit to assist as necessary, however I did not participate in this use of force incident. I witnessed all participating staff utilize only the minimum amount of force to bring Inmate Lee into compliance with lawful commands.

I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.

| | | |
|---|---|---|
| Lieutenant Drew Dice | | September 4, 2019 |
| **Reporting Employee's Name (Print)** | **Reporting Employee's Signature** | **Date** |

**Shift Supervisor / Department Head**
**COMMENT:** Supplemental documentation.

| | | |
|---|---|---|
| Lieutenant Tyler McCranie | | September 4, 2019 |
| **Shift Supervisor's Name (Print)** | **Shift Supervisor's Signature** | **Date** |

**REVIEW:** Supplemental.

| | | |
|---|---|---|
| Major Bradley Oakes | | 9/5/19 |
| **Correctional Officer Chief's Name (Print)** | **Correctional Officer Chief's Signature** | **Date** |

**REVIEW:** Addendum

| | | |
|---|---|---|
| Walker Clemmons, Warden | | 9/20/19 |
| **Warden's Name (Print)** | **Warden's Signature** | **Date** |

DC6-210A (Effective 1/18)

EXHIBIT
G

33-602.210, F.A.C.

Page 1 of 2

DEPARTMENT OF CORRECTIONS

## USE OF FORCE INCIDENT REPORT

| | | | |
|---|---|---|---|
| Reporting Institution: | Santa Rosa Correctional Institution | Incident Report Number: | 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 G |
| Reporting Employee: | Officer Justin Boatwright | PREA Number: | |
| Employee ID Number: | 92882 | Date of Incident: | September 4, 2019 |
| Person(s) Involved: | Inmate Lee, Robert DC#T15204 | Time of Incident: | Approximately 1:55pm |
| | | Witness(es): | See attached DC6-230 |

| | | |
|---|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No | |
| Inmate Placed in Confinement: | ☐ Yes ☒ No | |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 3:55pm | |
| EAC Notified: | ☒ Yes ☐ No Time: 4:08pm | |
| Supporting Documents Attached | Yes | |

| | |
|---|---|
| Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Work Order Initiated: | ☐ Yes ☒ No |
| MINS Initiated: | ☒ Yes ☐ No |
| Duty Officer Name: | Pate 2019-09-22420 |

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned as the Delta Dormitory Closed Management Programs Officer at Santa Rosa Correctional Institution – Main Unit. At approximately 1:55pm, I was instructed to retrieve the G-Dormitory handheld digital video recorder and begin recording due to a possible chemical agent Use of Force involving Inmate Lee, Robert DC#T15204. At approximately 2:02pm, video recording commenced as Lieutenant Tyler McCranie provided a brief lead-in statement. Video recording ran uninterrupted through three applications of chemical agents. Following the application of chemical agents Lieutenant Drew Dice provided a brief closing statement and video recording ceased due to the Forced Cell Extraction camera taking over. Following this organized use of force incident. A DC1-801: Chain of Custody was completed for the digital video disc for this incident. I witnessed but did not participate in this Use of Force.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| Officer Justin Boatwright | | September 4, 2019 |
| Reporting Employee's Name (Print) | Reporting Employee's Signature | Date |

Shift Supervisor / Department Head
COMMENT: Supplemental documentation.

| | | |
|---|---|---|
| Lieutenant Tyler McCranie | | September 4, 2019 |
| Shift Supervisor's Name (Print) | Shift Supervisor's Signature | Date |

REVIEW: Supplemental.

| | | |
|---|---|---|
| Major Bradley Oates   Major N. Reid | | 9/5/19 |
| Correctional Officer Chief's Name (Print) | Correctional Officer Chief's Signature | Date |

REVIEW: Addendum.

```
EXHIBIT
  H
```

| | | |
|---|---|---|
| Walker Clemmons, Warden | | 9/20/19 |
| Warden's Name (Print) | Warden's Signature | Date |

DC6-210A (Effective 1/18)          Incorporated by Reference in Rule 33-602.210, F.A.C.          Page 1 of 2

## ¬PARTMENT OF CORRECTIONS

## USE OF FORCE INCIDENT REPORT

| | | |
|---|---|---|
| **Reporting Institution:** Santa Rosa Correctional Institution | | **Incident Report Number:** 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 H |
| **Reporting Employee:** Officer Corey Jones | | **PREA Number:** |
| **Employee ID Number:** 109643 | | **Date of Incident:** September 4, 2019 |
| **Person(s) Involved:** Inmate Lee, Robert DC#T15204 | | **Time of Incident:** Approximately 2:00pm |
| | | **Witness(es):** See attached DC6-230 |

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☒ No
Duty Warden Notified: ☒ Yes ☐ No Time: 3:55pm
EAC Notified: ☒ Yes ☐ No Time: 4:08pm
Supporting Documents Attached  Yes

Disciplinary Report Initiated: ☒ Yes ☐ No
Work Order Initiated: ☐ Yes ☒ No
MINS Initiated: ☒ Yes ☐ No
Duty Officer Name:  Pate 2019-09-22420

**DETAILS OF INCIDENT:** On September 4, 2019, I was assigned as a Close Management Escort Officer at Santa Rosa Correctional Institution – Main Unit. At approximately 2:00pm, I was instructed to retrieve the B-Dormitory handheld digital video recorder and report to G-Dormitory due to a possible Forced Cell Extraction involving Inmate Lee, Robert DC#T15204. At approximately 2:02pm, video recording commenced as Lieutenant Tyler McCranie provided a brief lead-in statement. Video recording ran un-interrupted through a Forced Cell Extraction and Inmate Lee receiving a cool water decontamination shower, a post Use of Force Medical Evaluation, and placed back into his decontaminated cell G1211. At approximately 3:15pm, Lieutenant McCranie provided a brief closing statement and video recording ceased. A DC1-801, Chain of Custody was completed for the digital video disc for this incident. I witnessed but did not participate in this Use of Force.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Officer Corey Jones
**Reporting Employee's Name (Print)**          **Reporting Employee's Signature**          September 4, 2019
                                                                                              **Date**

**Shift Supervisor / Department Head**
**COMMENT:** Supplemental documentation. Refer to DC6-230 Report of Force Used and DC6-210A Use of Force Incident Report submitted by Officer Michael Eiland for additional information regarding the organized use of force. Forward to the Correctional Officer Chief for further review.

Lieutenant Tyler McCranie
**Shift Supervisor's Name (Print)**          **Shift Supervisor's Signature**          September 4, 2019
                                                                                        **Date**
**REVIEW:** Supplemented,

Major Bradley Oakes
**Correctional Officer Chief's Name (Print)**          **Correctional Officer Chief's Signature**          9/5/19
                                                                                                            **Date**
**REVIEW:** Addendum.

**EXHIBIT**
**I**

Walker Clemmons, Warden
**Warden's Name (Print)**          **Warden's Signature**          9/20/19
                                                                   **Date**

DC6-210A (Effective 1/18)          Incorporated by Reference in Rule 33-602.210, F.A.C.          Page 1 of 2

33-602.210 Use of Force.


(1)  Definitions.


(a)  Controlled Conditions - Circumstances in which the inmate upon whom force would be used is secured in a cell, shower room, recreation enclosure, isolation management room, or similarly secure setting, and is not causing, or posing a threat of, any harm to themselves or others.


(b)  Correctional Emergency Response Team - A team comprised of Department staff trained in special tactics, including the use of deadly force, for the intervention and resolution of life-threatening crisis events.


(c)  Crisis Intervention Techniques (CIT) - Methods used to offer immediate, short-term help to individuals who experience an event that produces emotional, mental, physical, or behavioral distress or problems.

(d)  Crisis Intervention Techniques Training - This training assists staff in applying non-force de-escalation techniques and strategies in the care and control of inmates suspected to be mentally ill.


(e)  CS - Orthochlorobenzal Malononitrile or Orthochlorobenzylidene Malononitrile - An irritant agent that causes a burning sensation and tearing of the eyes, nasal discharge, and skin and upper respiratory irritation.


(f)  Custodial grasp - The firm grasp by Department staff of the tricep(s) or elbow(s) of an inmate who is being transported internally and who is proceeding appropriately.


(g)  Deadly Force - Force that is likely to cause death or great bodily harm.


(h)  Direct Firing - The practice of firing specialty impact munitions directly into a group of rioters with a target area of the waist or below from no less than a minimum distance designated by the manufacturer of the munitions.

(i)  Electronic Immobilization Device (EID) - A device (hand-held, dart-fired, shield, or belt/band type) that delivers an immobilizing electric charge of pre-determined and preset duration.


(j)  Emergency Action Center - The unit located in the Central Office charged with receiving information regarding serious incidents, such as riots and escapes, from all state correctional institutions and private correctional facilities and reporting the information to the proper authorities. This unit also receives requests for criminal histories, warrant confirmations, and offender location requests from law enforcement agencies throughout the United States.


(k)  Great Bodily Harm - A physical condition that creates a substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of any bodily member or organ.


(l)  Incident Commander - The employee responsible for the management of emergency incidents, such as riots and natural disasters.


(m)  Institution - Any "state correctional institution" as defined in Section 944.02, F.S., or

"private correctional facility" as defined in Section 944.710, F.S.


(n)  Isolation Management Room - A room in an infirmary or inpatient mental health unit that is used for observation and management of inmates who present symptoms of acute mental impairment, inmates who present a risk of serious self-injurious or suicidal behavior, and other inmates in need of observation for mental health reasons.


(o)  Less-Lethal Weapons - Weapons whose standard use is less likely to cause death or great bodily harm than are firearms loaded with lethal ammunition, including EIDs batons, chemical agents described in this rule, and specialty impact munitions.


(p)  Less Than Lethal Force - Any force that is neither intended nor likely to cause death or great bodily harm.


(q)  Observation Cells - Cells in areas outside of an infirmary/inpatient mental health unit that meet the safety and custodial standards of an isolation management room.

(r) OC - Oleoresin Capsicum - An inflammatory agent that causes tearing and involuntary closing of the eyes, nasal discharge, sneezing, disorientation, and the sensation of respiratory distress. OC is the primary chemical agent to be utilized for cell extractions and other in-cell uses unless circumstances exist as described in this rule.

(s) Organized Use of Force - Any force that may be administered to control, escort, or geographically relocate an inmate, or to quell a disturbance in controlled conditions, when the immediate application is not necessary to prevent a hazard to any person.

(t) Procedural Violation - A violation of any rule, procedure, or training that is not related to the type or amount of force used and is not criminal in nature.

(u) Psychiatric Restraints - Devices, procedures, or techniques used to restrict movement or behavior as to greatly reduce or eliminate the ability of an individual to harm himself, herself, or others, including four-point and five-point psychiatric restraints.

(v) Qualified Mental Health Professional - A clinician who is credentialed and approved by the Department's credentials review committee or a Department contractor who provides mental health treatment and services to an inmate assigned to a given level of mental health care.

(w) Rapid Response Team - A team comprised of correctional officers (officers) specially trained in less-lethal and lethal munitions, chemical munitions, crowd control, and riot suppression.

(x) Reactionary Use of Force - Any force that must be administered quickly or immediately to compel the cessation of an inmate's violence or resistance to a lawful order.

(y) Reasonable Force - Any force that is authorized and appropriate for the purpose of protecting oneself or another or for gaining an inmate's compliance with a lawful order.

(z) Rubber Ball Rounds - Multiple pellets fired from cartridges at the lower extremities of rioters that are designed to inflict pain compliance.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

(aa)

S-2 - The mental health classification grade denoting mild impairment in the ability to meet the ordinary demands of living within general inmate housing (including segregation) due to a diagnosed mental disorder. The impairment in functioning is not so severe as to prevent satisfactory adjustment in general inmate housing with provision of mental health services. Clinical management of the disorder may require at least periodic administration of psychotropic medication, which the inmate may exercise his or her right to refuse.

(bb)

S-3 - The mental health classification grade denoting moderate impairment in the ability to meet the ordinary demands of living within general inmate housing, due to a diagnosed mental disorder. The impairment in functioning is not so severe as to prevent satisfactory adjustment in general inmate housing with provision of mental health services. Clinical management of the disorder may require at least periodic administration of psychotropic medication, which the inmate may exercise his or her right to refuse.

(cc) Self-Injury or Self-Injurious Behavior - Any behavior where an individual purposefully inflicts harm to his or her body without the obvious intention of committing suicide.

(dd) Shift Supervisor - The highest ranking officer of the on-duty shift.

(ee) Skip Firing - The practice of firing specialty impact munitions five to seven feet in front of rioters, thereby deflecting the munitions into the legs of the rioters.

(ff) Specialty Impact Munitions - Munitions designed to incapacitate, distract, and control a subject with a relatively low likelihood of life-threatening injury.

(gg) Suicide Attempt - Any intentional act that is potentially lethal and is committed in an effort to complete a suicide.

(hh) Uninvolved CIT-Trained Staff Member - A CIT-trained staff member who is not involved in the events leading up to the need to use force.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

**(ii) Wooden Baton Rounds - Multiple wooden projectiles fired from a 37/40-mm weapon, designed to be skip fired into the lower extremities of rioters to inflict pain compliance.**

**(2) Authorization to Use Force.**

(a) The following authorization to use force is subject to every other provision of this rule. Department staff, and staff of a Department contractor who are responsible for supervising inmates, are authorized to apply force on an inmate only when they reasonably believe it to be necessary to:

1. Defend himself, herself, or others against imminent or already occurring unlawful force,

2. Prevent a person from escaping from an institution when the staff member reasonably believes that person is lawfully detained in such institution,

3. Gain custody of an escaped inmate,

4. Prevent damage to property,

5. Quell a disturbance,

6. Overcome an inmate's physical resistance to a lawful order,

7. Prevent an inmate from inflicting any self-injury or from attempting to commit suicide, or

8. Restrain an inmate to permit the lawful administration of medical treatment under the supervision of a physician or his or her designee when treatment is necessary to protect the inmate from self-injury or death; or to protect the health of others.

(b) Force is necessary only when it would be unreasonable to pursue other means of attempting to achieve one of the objectives listed in paragraph (2)(a). Force is an option of last resort, to be used only after non-force options have been attempted and were ineffective or when the circumstances reasonably preclude attempting or continuing non-force alternatives to achieve one of the objectives listed in paragraph (2)(a).

(c) Any force used must be reasonable, lawful, and of the minimum amount necessary to achieve one or more of the objectives listed in paragraph (2)(a).

(d) The custodial grasp is not a use of force.

(e) Verbal abuse alone is not a sufficient basis to authorize the use of force.

(3) Determination of Method of Force. If a Department staff member, Department contractor staff member, or private correctional facility staff member determines that force should be used, he or she must determine which method of force to use or seek to use. The person pursuing the use of force should pursue any method of force that is lawful and that he or she reasonably believes, based on training and experience, is consistent with Department rules and is most appropriate under the circumstances.

**(4) Use of Force - General and Miscellaneous Provisions.**

(a) Many of the guidelines and restrictions for the use of force set forth in this rule pertain only to a specific method of force, and sometimes to only the

reactionary or organized use of such a method. However, where applicable, the provisions of this subsection apply to the use of force generally.

(b) Miscellaneous Use of Force Protocol.

1. Any use of force shall cease whenever an inmate complies with lawful orders or ceases the behavior which justified the use of force.

2. Use of force shall not be applied for punishment. Physical restraints such as handcuffs, leg irons, flex cuffs, and other such devices shall only be used for restraint purposes and not for punishment.

3. Inmates shall not be carried, dragged, or lifted by restraint devices. This shall not be construed to prohibit the use of an escort chair pursuant to Rule 33-602.212, F.A.C.

4. Hands-on force shall not be used if injury is less likely to occur by using chemical agents, specialty impact munitions, or EIDs.

5. If an inmate who is secured in a cell fails to comply with a lawful order to cease his or her prevention of staff from closing a food flap/cuff port cover, staff shall pursue an organized use of force.

6. Reactionary use of force to prevent an inmate from self-harm shall only be used in the most extreme cases when the action of the inmate has caused observable injuries, the inmate is attempting to hang himself or herself, or the inmate possesses an instrument for self-injury and the risk is imminently life threatening.

(c) Video Recording Protocol.

1. General.

a. Video recordings of all use of force incidents shall continue uninterrupted from commencement of recording until the situation is stable and under control and the inmate is placed in a secure cell or transport vehicle for transfer.

b. The camera operator shall, to the best of his or her ability, ensure that all staff actively involved in

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

any use of force and captured within the view finder of the camera is identified by rank/title and name.

2. Reactionary Use of Force.

a. A camera operator shall commence recording all reactionary use of force incidents upon arrival at the scene as soon as possible. At a minimum, the camera operator shall verbally identify himself or herself and state the date, time, and location of the incident when commencing recording.

b. Once the camera operator and shift supervisor arrive on the scene of a reactionary use of force, the shift supervisor, upon assessing the situation and being properly briefed, shall make a brief statement noting the reason(s) for the use of force. This shall be prior to the conclusion of recording and must include:

(I) The rank/title and name of staff involved in the use of force,

(II) The rank/title and name of any staff who were present, but not involved in the use of force,

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

(III) The name and DC number of the inmate(s) involved,

(IV) The type and amount of force used,

(V) Any other pertinent information that he or she deems relevant.

3. Organized Use of Force.

a. All organized use of force incidents shall be video recorded unless exigent or emergency circumstances prevent such action.

b. The shift supervisor during any organized use of force shall include in each video recorded markers of the following:

(I) Date and time of the recording,

(II) Location of the recording,

(III) Name and rank of supervisor(s) present,

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

(IV) Name and rank of person authorizing use of chemical agent (if applicable),

(V) Name and DC number of the inmate involved in the use of force,

(VI) Name of the camera operator,

(VII) Brief description of efforts taken to stabilize or control the inmate prior to the application of force,

(VIII) Final warning order administered by a supervisor or Incident Commander,

(IX) Clear, concise, and audible verbal warning to the inmate of pending application of force or entry into cell for extraction,

(X) Application of chemical agents,

(XI) Verbal order for a decontamination shower,

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Case 3:20-cv-05462-MCR-HTC   Document 63   Filed 10/25/21   Page 44 of 57

shall be noted on the Report of Force Used, Form DC6-230.

4. Only staff members who have received training in the use of chemical agents may discharge, carry, possess, or use chemical agents within an institution, except during emergencies such as riots or disasters or at the direction of the warden or designee.

(b) Reactionary use of chemical agents on inmates outside of controlled conditions.

1. Officers may utilize chemical agents for any of the reasons set forth in paragraph (2)(a). During emergency situations with multiple inmates in an outside area, chemical agents may be applied to quell the disturbance. In reactionary use of force situations, chemical agents are authorized for disbursal in a continuous manner until the moment the inmate(s) become(s) compliant with lawful orders.

2. An inmate shall at no time be removed from his or her assigned cell or placed at an alternate location, have clothing removed, or be restrained for the purpose of chemical agent application. If an officer administers chemical agents while an inmate is handcuffed or wearing restraints, and removal of such

---

restraints was not possible prior to the application, the officer shall record an explanation of the circumstances in the Report of Force Used, Form DC6-230.

(c) Use of Chemical Agents on Inmates in Controlled Conditions.

1. The warden or designee shall be consulted and his or her written Authorization for Use of Force, Form DC6-232, must be obtained for any organized use of force prior to the application of chemical agents. Form DC6-232, Authorization for Use of Force, is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref -01701. The effective date of the form is 09/99. The person responsible for submitting the use of force authorization shall prepare, date, and sign the authorization either prior to or immediately after the end of the shift in which force was used. If the authorization for use of force is granted after normal working hours, the authority granting the action shall sign the use of force authorization within one day following the incident, excluding weekends and holidays.

---

---

2. When an inmate in a controlled condition creates a disturbance, or the officer's ability to provide unit security is adversely impacted by an inmate's behavior, and the inmate refuses to comply with clear and audible lawful orders to cease his or her behavior, the following steps will be followed unless there is an emergency or other circumstances arise that would dictate alternative actions:

a. The housing unit supervisor will counsel with the inmate, ordering compliance with lawful commands or cessation of the behavior that would justify using force.

b. If the inmate remains non-compliant, the confinement lieutenant, close management lieutenant, or shift supervisor will counsel with the inmate, ordering compliance with lawful commands or cessation of the behavior that would justify using force.

c. If the inmate remains non-compliant, prior to issuance of a final order to an inmate ordering compliance with lawful commands or cessation of the behavior that would justify using force, the confinement lieutenant, close management lieutenant,

---

or shift supervisor shall have control room staff check the Bed Inventory List to ascertain whether the inmate involved is classified as S-2 or higher. During regular work hours, if the involved inmate is S-2 or higher, the housing lieutenant or shift supervisor shall have a qualified mental health professional, if available, or CIT-trained security staff member provide crisis intervention and attempt to de-escalate the situation and prevent a use of force. After regular work hours, the housing lieutenant or shift supervisor shall have an uninvolved CIT-trained officer speak with the inmate in an attempt to de-escalate the situation and prevent a use of force.

d. If the inmate remains non-compliant or continues in his or her behavior that would justify using force and it is evident that the use of chemical agents is necessary to gain control of the inmate while minimizing the risk of injuries to others, the housing lieutenant or shift supervisor shall ensure that the following order of events takes place:

(I) Uninvolved inmates in the cell or immediate area shall be given the opportunity to exit or depart the potentially affected area, if such relocation does not create or cause a hazard to the safety of others.

---

(XII) Decontamination of the inmate,

(XIII) Any medical examination performed after the use of force,

(XIV) Physical escort and placement in a decontaminated cell after incident,

(XV) Verbal refusals by the inmate to participate in decontamination or medical examination (if applicable),

(XVI) The name and rank of each Department staff member present.

c. Anytime there is a change in the on-scene supervisor or other staff during an application of an organized use of force, a new video recording will be initiated and the requirements in subparagraph (4)(c)1., and sub-subparagraphs (4)(c)3.a. and b., shall be repeated.

d. In the event that the inmate ceases his or her disruptive behavior after being issued a final order while the shift supervisor and camera operator are

present with a camera, but resumes such conduct after the shift supervisor and camera operator have departed the area prior to an application of chemical agents, the shift supervisor shall recommence video recording.

e. In all cases where the administration of chemical agents is subsequently required, video recording will resume prior to the application of chemical agents, to include a statement referring to the originating incident, and continue until completion as directed in sub-subparagraph (4)(c)1.a.

4. Post-Use of Force.

a. Video recordings of post-use of force medical exams shall be conducted through a window or at a distance in such a manner so as to provide the maximum amount of privacy needed for the exams and so as to limit the disclosure of inmate protected health information to the minimum amount necessary. The fact that the footage is taken through a window or at a sufficient distance is to keep communication between the inmate and medical staff confidential and to ensure that only the minimum amount of protected health information, e.g., visible injuries or the lack thereof, is disclosed. Inmates involved in an organized

use of force shall be video recorded continually until they have been placed in a vehicle for transportation or in a secure cell.

b. Immediately prior to securing the inmate in a cell or a vehicle for transportation, the officer in charge shall ensure the camera operator records the inmate's anterior and posterior body for the presence or absence of visible injuries. Caution shall be taken to avoid capturing the inmate's unclothed genitalia, buttocks, or female breasts.

(5) Use of Chemical Agents.

(a) General.

1. All chemical agents shall be used with caution and in accordance with the manufacturer's instructions.

2. Authorization for an organized use of force application of chemical agents within an institution may only be given by the warden or designee.

3. Authorization to Use CS instead of OC.

a. CS may be used during cell extractions and other in-cell incidents if OC applications previously administered were ineffective in obtaining compliance or ceasing disruptive actions or physically threatening behavior.

b. The warden or designee may authorize the use of CS as an initial primary chemical agent whenever past applications of OC on an inmate were documented on a Report of Force Used, Form DC6-230, as having been applied and ineffective. Form DC6-230, Report of Force Used, is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref -04915. The effective date of the form is 10/20.

c. The warden or designee may authorize the use of CS as an initial or primary chemical agent during in-cell applications whenever an inmate attempts to deploy a shield, barrier, or obstruction in an obvious attempt to avoid contact with an application of chemical agents. Justification for the use of CS whenever an inmate barricades or presents physical obstructions to counter chemical agent applications

shift supervisor or close management lieutenant will order the inmate to submit to hand restraints. Once the inmate is restrained, decontamination protocol shall be initiated as outlined in paragraph (9)(b) of this rule.

(II) Once decontamination protocol is complete, the inmate shall be offered medical examination as outlined in paragraph (9)(c) of this rule.

(III) Reports for the completed use of force shall be completed in accordance with paragraph (9)(a) of this rule.

(6) Use of Other Less-Lethal Weapons.

(a) Less-lethal weapons may be used in either reactionary or organized uses of force.

(b) The use of EIDs, batons, specialty impact munitions, or other less-lethal weapons within an institution shall be authorized only by the warden or designee when their use is necessary, their use would comport with the other provisions of this rule, and the use of the chemical agents referenced elsewhere in this rule would be either inappropriate or ineffective. Such

weapons shall be utilized by officers who have completed the Department's standard training on their use and shall be used in accordance with manufacturer specifications.

1. EIDs.

a. EIDs authorized by the Department include:

(I) Handheld EIDs, which shall be an intermediate level of force alternative, issued to officers who are transporting and supervising inmates outside an institution,

(II) Dart-fired EID (DFEID), which shall be an intermediate level of force alternative, issued primarily to officers supervising inmates within the general population setting. DFEIDs shall not be used on inmates while in a confinement or close management cell,

(III) Electronic shields, which may be used by forced cell extraction teams, and

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

(IV) Electronic restraint belts, which are authorized to be placed on an inmate for appearance in court, during transportation, or when the inmate is determined to be high risk or to have a history of violent behavior.

b. EIDs shall not be used on anyone other than an inmate during an authorized use of force, or upon any person to prevent serious injury or death. If possible, the shift supervisor shall counsel with the inmate, issue the final order to the inmate ordering compliance or cessation of disruptive behavior, and be present prior to the use of an EID at an institution, or during work detail or transport.

c. DFEIDs are authorized to be used during reactionary use of force incidents prior to using chemical agents or physical force when appropriate and necessary to quickly or immediately quell a disturbance involving the active physical resistance of an inmate to a lawful order when the inmate has the apparent ability to physically threaten an officer or another person.

d. DFEIDs are authorized to be used during reactionary use of force incidents when appropriate to defend against an inmate's imminent use of unlawful

force upon staff, inmates, or others, or to overcome an inmate's active physical resistance to a lawful order when the inmate has the apparent ability to physically threaten an officer or another person.

e. Prior to any organized use of force of the type described in sub-sub-paragraph (6)(b)1.b.(III), above, the shift supervisor shall review the Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices, Form DC4-650B, to determine whether the inmate has a medical condition that may be exacerbated by the intended force. If the inmate has a medical risk factor for EIDs, they shall not be used on the inmate unless each of the following conditions exists: the inmate possesses a weapon capable of causing great bodily harm or death, the warden or designee approves, and medical staff are present in the housing unit prior to the application of EIDs. Medical staff shall be consulted about physical conditions of an inmate that may be aggravated by the application of EIDs unless safety concerns prevent prior consultation. If the inmate has a medical risk factor for EIDs, this does not automatically preclude the use of chemical agents on the inmate.

2. Specialty impact munitions. Specialty impact munitions shall only be used when necessary after all

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

(II) The shift supervisor shall review the Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices, Form DC4-650B, to determine whether the inmate has a medical condition that may be exacerbated by the intended force. Form DC4-650B, Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices, is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-12229. The effective date of the form is 10/20. If the inmate has a medical risk factor for chemical agents, chemical agents shall not be used on the inmate unless each of the following conditions exists: the inmate possesses a weapon capable of causing great bodily harm or death, the warden or designee approves, and medical staff are present in the housing unit prior to the application of chemical agents. Medical staff shall be consulted about physical conditions of an inmate that may be aggravated by the application of chemical agents unless safety concerns prevent prior consultation. If the inmate has a medical risk factor for chemical agents as indicated on the risk assessment, this does not automatically preclude the use of electronic immobilization devices on the inmate.

(III) The warden or designee shall be contacted for authorization to use chemical agents or other force in the area. The warden shall not give authorization if the use of chemical agents or other force is not appropriate under the circumstances.

(IV) Chemical agents or EIDs shall be retrieved from secure storage or preparations shall be made for a forced cell extraction.

(V) Video recording procedures shall be initiated as outlined in subsection (4) of this rule.

(VI) A confinement or close management lieutenant or shift supervisor shall issue a clear concise and audible final order to the inmate ordering compliance. The inmate shall be advised chemical agents shall be used, if necessary, to gain compliance. If the inmate complies, the compliance shall be video recorded for three (3) minutes and then the video recording shall cease. If, during the same shift, the inmate resumes his or her disruptive behavior, video recording shall resume prior to the application of chemical agents or other force. This recording shall include a statement referring to the originating incident, and continue from this point until the decontaminating shower is given, medical examination is offered, and the inmate

is returned to secure, decontaminated housing or transport vehicle.

(VII) If, after three (3) minutes, the inmate remains non-compliant with the final order of the housing lieutenant or shift supervisor and continues to disobey lawful orders or continues the behavior that would justify using force, a designated security staff member shall administer chemical agents upon the inmate in the amount of no greater than three (3) one-second bursts. The housing lieutenant or shift supervisor shall be present to directly oversee and provide clear direction to the security staff member designated to administer the chemical agents.

(VIII) If the inmate's disruptive behavior continues after the initial application, a subsequent application of chemical agents in the amount of no greater than three (3) one-second bursts may be administered upon an inmate after at least five (5) minutes have elapsed since the initial chemical agent application.

(IX) If the inmate does not comply with orders after a minimum of five (5) minutes have elapsed from the conclusion of the second application of chemical agents, the warden or designee shall be consulted to evaluate what further response, which may include a

third application of chemical agents, is necessary to regain compliance or control of the inmate.

e. Protocol following a third application of chemical agents.

(I) The warden or designee shall be consulted to evaluate further responses. Additional Report of Force Used, Form DC6-230, shall be used to document the incident. The shift supervisor shall ensure all use of force applications are properly documented in a Report of Force Used, Form DC6-230.

(II) The warden or designee shall authorize the activation of a cell extraction team as necessary to ensure safety or obtain compliance; however, additional applications of chemical agents shall not be administered or discharged upon an inmate after the initial three applications until at least sixty (60) minutes have elapsed from the time of the last application.

f. Post-chemical agent use protocol.

(I) Once the inmate becomes compliant with lawful orders and ceases his or her disruptive behavior, the

(II)  The PLS is authorized for use in confinement, close management, maximum management, and death row recreation areas to quell mass disturbances, violent events, assaults, and fights among inmates.

4.  Noise flash distraction devices. Noise flash distraction devices shall be used only by the Department's Rapid Response Teams, Correctional Emergency Response Teams, and/or other trained staff as authorized by the Deputy Secretary of Institutions for the purpose of creating a momentary diversion to assist correctional staff in restoring order in hostile situations. These situations include hostage rescue, crowd control, and certain escape and recapture efforts. The following noise flash distraction devices have been approved for use by the Department:

a.  Hand-launched, reloaded noise flash distraction devices,

b.  Hand-launched, single use noise flash distraction devices, and

c.  Shotgun-launched (aerial distraction) noise flash distraction devices.

(7)  Use of Deadly Force.

(a)  Use of Deadly Force. Except as set forth elsewhere in this subsection, an officer is authorized to use deadly force only when the officer believes that such force is necessary to prevent imminent death or great bodily harm to himself, herself, or another.

1.  Use of Firearms. The procedures set forth in this rule shall be readily available at all institutions for staff review.

2.  Firearms or weapons shall be issued to an officer only upon instructions of the warden or designee, chief of security, or shift supervisor by the arsenal officer or the officer designated to issue weapons. Officers shall not intentionally discharge a firearm loaded with lethal ammunition, as opposed to less-lethal ammunition, at or in the direction of another person except under the following circumstances after all reasonable non-lethal alternatives have been exhausted and there is no reasonable danger to innocent bystanders:

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

a.  To prevent an escape of an inmate who is actively attempting to flee custody,

b.  To prevent any conveyance to gain unauthorized entry into or exit from an institution,

c.  To prevent imminent death or great bodily harm, or

d.  To quell a riot.

3.  Nothing in this rule shall be read to say that there are always reasonable non-lethal alternatives to the intentional discharge of firearms loaded with lethal ammunition.

4.  Firearms and other weapons are approved for use by the Department's designated armed response team, Rapid Response Teams, Correctional Emergency Response Teams, and/or other trained staff as authorized by the Deputy Secretary of Institutions for use during riots and mass disturbances. The Incident Commander shall determine the type of authorized lethal or less-lethal

ammunition that is necessary to quell the riot or mass disturbance, and shall give orders accordingly.

5.  The Incident Commander shall determine which weapons are necessary to quell the riot or mass disturbance, and shall give orders accordingly.

6.  Firearms shall not be discharged:

a.  In any case where there is a reasonable belief that the life of a bystander may be endangered by discharge of the firearm,

b.  From any moving vehicle unless such action is reasonably believed necessary to protect oneself or another from imminent death or great bodily harm,

c.  As a warning, except during escapes or when the officer reasonably believes it necessary to protect oneself or another from imminent death or great bodily harm, and time permits,

d.  Until the employee reasonably believes that the person to be fired upon is an escaping inmate,

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

other reasonable alternatives to regain control have been exhausted. They are intended to be used as an interim force response between the use of chemical agents and deadly force.

a. Specialty impact munitions shall be used only by the Department's designated armed response teams, Rapid Response Teams, Correctional Emergency Response Teams, and/or trained staff as authorized by the Deputy Secretary of Institutions for use during riots and disturbances and to respond to staff assaults. They are intended as a less-lethal alternative to the use of deadly force. Specialty impact munitions shall not be used on anyone other than an inmate during an authorized use of force.

b. The following specialty impact munitions have been approved for use by the Department:

(I) 37/40-mm rubber ball pellet rounds,

(II) 12 gauge rubber ball pellet rounds – high velocity,

(III) 12 gauge rubber ball pellet rounds – low velocity,

(IV) 12 gauge drag stabilized (bean bag) rounds,

(V) 37/40-mm wooden baton rounds (skip fired 6 feet in front of target, no direct fire),

(VI) Stinger rubber ball grenades (stun grenade),

(VII) 40-mm impact munitions (OC, marking and inert foam) long range, and

(VIII) 40-mm impact munitions (OC, marking and inert foam) short range.

c. Selection and deployment of specialty impact munitions during a riot or disturbance or other instance where less-lethal force options are needed shall be authorized by the Secretary, regional director, or warden or designee.

d. Specialty impact munitions shall not be deployed in the direction of any individual in a manner contrary to the manufacturer's directions or at a distance of less than that recommended by the manufacturer, unless

the threat of bodily harm or death justifies the escalation to deadly force.

3. Pepperball Launching System (PLS). The PLS shall be used instead of aerosol-type chemical agents when aerosol-type chemical agents would not be effective due to weather conditions or when their use could subject the officer or uninvolved inmates to injury. The PLS shall be used only by restricted labor squad supervisors and exercise officers for confinement, close management, maximum management, and death row populations. The PLS shall only be employed by officers who have completed the Department's standard training in their use and effects.

a. General Provisions.

(I) The Deputy Secretary of Institutions shall designate those institutions authorized to use the PLS.

(II) The PLS is classified as less-lethal at all distances, but, unless the incident necessitates otherwise, it only should be utilized at a distance of five (5) feet or greater to prevent the inmate from attempting to take control of the launcher.

b. Use of the PLS in Controlled Conditions.

(I) Written authorization from the warden or designee shall be received prior to utilization of the PLS for situations other than those described in sub-subparagraph (6)(c)3.c., below. This written authorization shall detail the reasons it was necessary to utilize the PLS in addition to or in place of aerosol-type chemical agents.

(II) In controlled situations when time constraints are not an issue, the PLS can only be used if authorized by the warden or designee. The warden or designee shall only authorize trained and certified officers to use the PLS.

c. Use of the PLS Outside of Controlled Conditions.

(I) The PLS is authorized for use to quell mass disturbances, violent events, assaults, and fights among inmates assigned to restricted labor squads. Authorized activation of the PLS by staff assigned to restricted labor squads does not constitute deadly force.

2. If the vehicle does not stop and continues to be driven or operated in a manner that indicates the driver intends to or is in the process of forcibly entering or exiting the perimeter, officers may use deadly force to prevent imminent death or great bodily harm or to prevent the escape of an inmate.

(d) Use of Force to Prevent Escape or to Recapture Escapee. Officers are authorized to use force, including deadly force, as necessary to prevent the escape of an inmate from an institution.

1. Escape attempts from inside an institutional perimeter where armed perimeter staff are assigned:

a. Institutions with a double perimeter fence. A loud verbal warning shall be made, if possible, instructing the inmate to stop or halt prior to the inmate's contact with any inner perimeter fence. A warning shot may be safely fired prior to any inmate's attempt to cross or pass over, through, or under the inner perimeter fence. A firearm shall not be fired at the inmate until he or she has begun to cross or pass over, through, or under the inner perimeter fence.

b. Institutions with a single perimeter fence. A loud verbal warning shall be made, if possible, instructing

the inmate to stop or halt prior to the inmate's contact with any perimeter fence. A warning shot may be safely fired prior to the inmate's contact with the perimeter fence. A firearm shall not be fired at the inmate until he or she has begun to cross, or to pass over, through, or under the perimeter fence.

c. Warning shots are authorized only as provided herein. In all other instances where deadly force is authorized during inmate escape attempts, a loud verbal warning shall be issued if time and circumstances permit.

2. Apprehension of escaped inmates once they are outside an institutional perimeter.

a. Officers are considered to be in active pursuit of an escaped inmate who has fled from an institution or supervised work detail so long as the escape recovery efforts are active. An officer is authorized to use deadly force, after giving a loud verbal warning for the inmate to stop or halt the escape attempt, when the inmate is demonstrating a refusal to cease active flight or escape from an institution or supervised work detail. A firearm shall not be fired if it creates a hazard to persons other than the inmate.

b. The officer in charge of the incident shall be the Incident Commander until relieved by a higher authority or the incident is turned over to a law enforcement agency. The Incident Commander of the escape attempt shall determine when active recapture efforts are terminated. Upon order of incident termination, the Incident Commander of the escape attempt may provide assistance to any law enforcement agency that is conducting an investigation of the incident. Officers who are utilized to assist outside law enforcement agencies are authorized to use deadly force pursuant to Florida law.

c. Officers may provide assistance to any law enforcement agency that is seeking to capture or take into custody any inmate who has failed to return from a furlough or non-supervised outside assignment or who has escaped from any work release center. Officers who are utilized to assist outside law enforcement agencies are authorized to use deadly force pursuant to Florida law.

3. Escape attempts by inmates who are being transported or escorted outside institutional perimeters, e.g., court appearances, hearings, and medical visits, or while being supervised while in a

hospital for treatment, are included within the purview of this subsection.

(e) Post-Firearm Discharge Protocol.

1. In addition to the any applicable post-use of force protocol set forth in subsection (9) of this rule, Department officers shall comply with the following protocol after a firearm is discharged:

a. Any officer who discharges a firearm shall complete a Use of Force Incident Report, Form DC6-210A. Form DC6-210A, Use of Force Incident Report is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500; http://www.flrules.org/Gateway/reference.asp?No=Ref -09005. The effective date of the form is 01/18.

b. Any officer who has fired a weapon during the performance of his or her duty shall, upon the conclusion of the event giving rise to the discharge of the firearm, immediately notify his or her supervisor.

e. Except after all reasonable non-lethal alternatives have been exhausted,

f. On the mere suspicion that a crime, no matter how serious, has been committed, or

g. Except as authorized by Florida law.

(b) Because aircraft such as helicopters, airplanes, and unmanned aircraft (collectively referred to as "aircraft") can be used to deliver contraband, carry out assaults, or facilitate an escape at an institution, the following policy shall apply whenever an aircraft approaches the perimeter fence line:

1. Staff shall immediately notify the control room of the location of the aircraft and its direction of flight, and shall continue to observe the aircraft.

2. When it can be done safely, actions other than firing weapons, such as waving arms in a manner to indicate disapproval to enter an area, shall be made in an attempt to cause the aircraft to change its flightpath.

3. If, when used, attempts to divert the aircraft fail, the aircraft shall be allowed to land.

4. Staff shall conduct a search of the flightpath of the aircraft over the property of an institution to determine if contraband was dropped.

5. All inmates shall be kept away from an aircraft while it is over or on the property of an institution.

6. Once an aircraft lands on the property of an institution, it shall be secured using armed security staff and shall be prevented from being flown away without causing damage to the aircraft by securing the flight equipment with locks and chains so that the aircraft can safely be removed by the proper authorities.

7. If an aircraft lands due to an in-flight emergency, it and any of its occupants shall be secured by staff until they are removed from the landing site.

8. If an aircraft hovers over or lands on the property of an institution for any reason, efforts shall be made to stop any inmate from boarding the aircraft. Any attempt by an inmate to board an

aircraft shall be deemed to be an escape attempt. Department personnel are authorized to use deadly force against any inmate attempting to escape in accordance with this rule. When circumstances permit, a verbal warning to halt and a warning shot shall be fired prior to the inmate reaching the aircraft to board.

9. If weapons are fired from an aircraft, Department personnel are authorized to return fire and use deadly force to protect themselves and others from imminent death or great bodily harm.

10. Firearms shall not be fired toward a departing aircraft after it leaves contact with the ground except when weapons are being fired from the aircraft.

11. Department personnel may use deadly force against an escaping inmate being carried by the unmanned aircraft.

12. When an aircraft lands on the property of an institution, the local law enforcement agency and the Office of Inspector General shall be immediately notified. The Office of Inspector General shall notify the Florida Department of Law Enforcement, Federal

Bureau of Investigation, and the Federal Aviation Administration.

13. All inmates shall receive orientation regarding this paragraph of the rule, which shall be made a part of the Department's orientation program at all reception centers. This orientation shall contain instructions stating that should any aircraft land or attempt to land on or near the property of a state correctional institution or private correctional facility, inmates are required to move away from the aircraft, and that any movement toward the aircraft by an inmate shall be viewed as an escape attempt and shall subject the inmate to the use of deadly force to prevent him or her from escaping.

(c) Use of a conveyance to gain unauthorized entry into or exit from an institution. The institution shall take the following steps to prevent any conveyance or vehicle from being used to gain unauthorized forced entry into or forced exit from its perimeter area:

1. Time permitting, a verbal order to halt shall be issued followed by a warning shot if the vehicle fails to stop.

Form DC6-210, Incident Report, is hereby
incorporated by reference. Copies of this form are
available from the Forms Control Administrator, 501
South Calhoun Street, Tallahassee, Florida 32399-
2500,
http://www.flrules.org/Gateway/reference.asp?No=Ref
-01697. The effective date of the form is 12/12. The
application of the psychiatric restraints will be
videotaped. The videotape, Form DC6-210, a written
use of force authorization, Form DC4-701C,
Emergency Room Record, and Form DC4-708,
Diagram of Injury, shall be completed in their entirety
with applicable data or the letters "N/A" used to
indicate inapplicability and shall be forwarded to the
warden or acting warden for review within one
working day. Form DC4-701C, Emergency Room
Record, is hereby incorporated by reference. Copies of
this form are available from the Forms Control
Administrator, 501 South Calhoun Street, Tallahassee,
Florida 32399-2500,
http://www.flrules.org/Gateway/reference.asp?No=Ref
-01695. The effective date of the form is 12/12. Form
DC4-708, Diagram of Injury, is hereby incorporated
by reference. Copies of this form are available from
the Forms Control Administrator, 501 South Calhoun
Street, Tallahassee, Florida 32399-2500,
http://www.flrules.org/Gateway/reference.asp?No=Ref
-01696. The effective date of the form is 10/07. Each
institution shall retain all videotape and documents for
the applicable retention period. If at any time prior to

Inmates shall be limited to possession of no more than 15 research items from the
law library. Research items shall be loaned for a maximum of 21 days. Inmates
who fail to return research items within 21 days shall be subject to disciplinary
action as provided in Rules 33-601.301-.314, F.A.C.

or during the application of the psychiatric restraints
the inmate offers resistance to the application, force
shall be used if necessary and justified.

(9) Post-Use of Force Protocol.

(a) Reporting.

1. The warden or designee shall be notified
immediately of the use of reactionary use of force
upon the conclusion of the event giving rise to the use
of a reactionary use of force incident.

2. Any time force is used, the staff member initially
using force shall complete a Report of Force Used,
Form DC6-230. The completed report must contain a
clear and comprehensive narrative of the
circumstances that led to the use of force, the specific
justification and necessity for the use of force, and a
description of the actual events that occurred as well
as the post-event actions. If more than one staff
member was involved in the use of force, the initial
staff member using force shall complete the Report of
Force Used, Form DC6-230. All participants who
agree with the initial staff member shall sign the
Report of Force Used, Form DC6-230. Any participant
who objects to information recorded by the reporting

Inmates shall be limited to possession of no more than 15 research items from the
law library. Research items shall be loaned for a maximum of 21 days. Inmates
who fail to return research items within 21 days shall be subject to disciplinary
action as provided in Rules 33-601.301-.314, F.A.C.

staff member or who has additional observations to
add to the narrative or description of the incident
written by the reporting staff member shall complete a
separate Report of Force Used, Form DC6-230 and
attach it to the Report of Force Used, Form DC6-230
completed by the staff member initially using force. To
provide additional detail, each participant in the use of
force shall also complete their own Use of Force
Incident Report, Form DC6-210A, and each such
report shall be attached to the Report of Force Used,
Form DC6-230 that was written by the person initially
using force. However, if a participant writes his or her
own Report of Force Used, Form DC6-230, his or her
Use of Force Incident Report, Form DC6-210A, shall
be attached to their own Report of Force Used, Form
DC6-230. All Report of Force Used, Form DC6-230,
and Use of Force Incident Report, Form DC6-210A,
shall be placed together in one folder or binder.

3. A Report of Force Used, Form DC6-230, shall be
completed by all staff involved in any use of force,
reactionary or organized, that occurred during their
shift. The Report of Force Used, Form DC6-230, shall
be completed no later than the end of the shift during
which the use of force occurred, or within 24 hours of
the use of force incident if completion of the form is
not possible during their shift. All reports must be
typed. No Report of Force Used, Form DC6-230, may
be altered, changed, or destroyed by any employee.

Inmates shall be limited to possession of no more than 15 research items from the
law library. Research items shall be loaned for a maximum of 21 days. Inmates
who fail to return research items within 21 days shall be subject to disciplinary
action as provided in Rules 33-601.301-.314, F.A.C.

However, staff members may submit amendments to a
report at any time with authorization from the warden
or designee. In such situations, the original report
itself shall remain intact and shall remain as part of
the file; an amendment, a separate document, shall be
added to the file. The warden or designee shall appoint
a staff member of equal or higher rank than those
involved in the use of force incident to collect all
pertinent information and required documentation.
This information shall include the reports of all
involved staff who do not agree with the account as
reported in the Report of Force Used, Form DC6-230,
or the statements of staff witnesses, inmate witnesses,
or the inmate subject. Any employee who witnesses
but does not participate in a use of force and suspects
inappropriate action shall complete a Use of Force
Incident Report, Form DC6-210A. The warden shall
ensure that Form DC4-701C, Emergency Room
Record, Form DC4-708, Diagram of Injury, and all
associated video recordings capturing the use of force
incident, including all fixed camera recordings that
captured the incident and subsequent inmate escort
until the handheld camera is activated, are included in
the review of all uses of force and are forwarded with
the rest of the required documentation to the Office of
the Inspector General - Use of Force Unit. The Office
of Inspector General shall provide the institution with
a use of force number once one is assigned and entered
into the Office of Inspector General case management
system.

Inmates shall be limited to possession of no more than 15 research items from the
law library. Research items shall be loaned for a maximum of 21 days. Inmates
who fail to return research items within 21 days shall be subject to disciplinary
action as provided in Rules 33-601.301-.314, F.A.C.

c. The shift supervisor shall, immediately after learning of such an incident, have the scene secured and notify the Office of Inspector General.

d. The senior officer in charge at the scene of the incident shall ensure all evidence is undisturbed, including locations of empty cartridges, until processed by a law enforcement agency or the Office of Inspector General.

2. Any officer who accidently or negligently discharges any firearm upon the property of any institution shall immediately report the incident to the warden or designee and shall complete a Use of Force Incident Report, Form DC6-210A.

(8) Use of Force Considerations and Protocol Unique to Inmates in Mental Health Treatment Settings.

(a) It is often necessary to use force on inmates who are in the mental health treatment settings described in this subsection. While these situations present unique issues and challenges, they are subject to all the provisions of this rule unless otherwise stated in this subsection.

(b) Batons, chemical agents, EIDs, specialty impact munitions, and other authorized less-lethal weapons shall not be used on inmates who are housed in isolation management rooms or observation rooms for the purpose of mental health services, assigned to inpatient mental health care in an infirmary, transitional care unit, crisis stabilization unit, corrections mental health institution, or other mental health treatment facility, as such facilities are defined in Rule 33-404.103, F.A.C., except when force reasonably appears necessary to:

1. Prevent an inmate or inmates from taking control of the health unit,

2. Prevent an inmate or inmates from taking a hostage,

3. Prevent an inmate or inmates from escaping,

4. Prevent an imminent assault on staff or other inmates,

5. Stop an ongoing assault on staff or inmates,

6. Disarm an inmate in possession of a weapon capable of causing injury to staff,

7. Subdue a take-over of the health unit, or

8. Free a hostage.

(c) As to the objectives set forth in subparagraphs (8)(b)1.- 4., force is necessary only where initiating or continuing non-force de-escalation of the situation by mental health staff would likely result in failure to achieve the objective.

(d) As to the objectives set forth in subparagraphs (8)(b)5.- 8., force is necessary only where initiating or continuing non-force de-escalation of the situation by mental health staff would likely result in serious injury to the inmate on whom force would be used, any injury to any other person, or a breach of the Department's duty to maintain the order, security, and proper functioning of the institutions.

(e) Use of Psychiatric Restraints.

1. Psychiatric restraints shall only be applied to inmates in an inpatient mental health level of care status when housed in an isolation management room.

2. The warden or designee may only authorize placing an inmate in psychiatric restraints after receiving an order and authorization from a qualified clinician. Authorization from the warden or designee shall be obtained prior to any inmate being placed in psychiatric restraints. Health services staff shall review the medical record of the inmate prior to advising the warden or designee of known medical conditions that would affect the health of the inmate should the inmate be placed in psychiatric restraints. There are some instances when an inmate must be placed in psychiatric restraints immediately after having chemical agents applied. In such situations, the inmate shall be monitored by health services staff without interruption. Medical attention shall be provided, upon detection of physical distress, without unnecessary delay. No inmate shall be restrained in a manner that restricts breathing.

3. When the use of psychiatric restraints is authorized, and the inmate does not offer resistance to the application of the restraints, the completion of Form DC6-210, Incident Report, shall be required.

e. In addition to completing a medical examination of any inmate who is exposed to chemical agents or EIDs, the clinician shall make a mental health referral for any inmate classified as "S-2" or "S-3" on Form DC4-529, Staff Request/Referral, and forward it immediately so that a mental health evaluation can be conducted on the inmate. Form DC4-529, Staff Request/Referral, is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref -01692. The effective date of the form is 12/12. Mental health staff shall evaluate the inmate no later than the next business day. The clinician who conducts the evaluation shall recommend to the shift supervisor those measures that he or she believes are necessary for the safety of the inmate, including placement in isolation management, a transitional care unit, or crisis stabilization as those placements are defined in Rule 33-404.103, F.A.C.

f. In the event an inmate is sent to an outside hospital for evaluation of any medical issue within 24-hours following a use of force involving the inmate, health services staff shall notify the shift supervisor of the circumstances necessitating transport. The shift supervisor shall immediately notify the Warden or designee of the transport. The Warden or designee

shall be responsible for notifying the district supervisor (during normal business hours) or the on-call supervisor (after business hours) of the Office of the Inspector General. The outside hospital records shall be included in the documentation provided to the Office of the Inspector General - Use of Force Unit.

2. Medical Attention for Department Staff Members Following Use of Force.

a. Any employee who participates in a reactionary or organized use of force and receives or experiences any injury shall report such injury to the officer in charge. Injured staff shall be offered an opportunity to receive a medical examination by health services staff.

b. Should the employee decline a post-use of force medical examination, he or she shall sign Form DC4-711A, Refusal of Health Care Services, indicating an examination was offered but declined. In those cases where an injury is claimed but not substantiated by medical examination, the statement by the medical provider shall indicate this, and the documentation shall be sufficient to support that no injury was found upon examination. Form DC4-711A is incorporated by reference in Rule 33-401.105, F.A.C.

3. Medical services staff members shall record all observations and recommendations on the following forms:

a. Form DC4-701C, Emergency Room Record.

b. Form DC4-708, Diagram of Injury.

c. Form DC4-701, Chronological Record of Health Care. Form DC4-701, Chronological Record of Health Care, is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref -01694. The effective date of the form is 4/8/10.

(10) Review Requirements.

(a) The warden or designee shall conduct a preliminary review of facts recorded in reports to determine if the application or demonstration of force was lawful and procedurally appropriate. All use of force incidents will be reviewed by a designee of the rank of Correctional Officer Major or above and shall

include a review of all videotapes of the incident. It shall be noted in a memorandum to the inspector with the Office of Inspector General if any video recording is poor quality. The warden shall ensure that any designee that reviews any use of force incident conducts the review in a comprehensive manner and that, in addition to procedural concerns, the force used was authorized and appropriate in accordance with this rule. Any time improperly applied or unlawful use of force is indicated in a report, the warden shall personally review the incident. The warden shall personally review the reports and all videotapes of any use of force incident that results in outside medical treatment for the involved inmate; this includes transfers to another institution specifically for medical treatment. The warden shall consult with the Health Service Administrator or other medical personnel as appropriate regarding the nature of the injuries and required treatment determined to be necessary by the outside medical entity and incorporate this information into the documentation forwarded to the Office of the Inspector General - Use of Force Unit and the determination of whether the force used was authorized and appropriate in accordance with this rule.

(b) If during any part of the review process there is any indication that a use of force was not authorized or appropriate in accordance with this rule, the

9. Officers shall use all reasonable and due care to avoid physically placing the inmate in any position that may contribute to positional asphyxia, restricted blood circulation, or interference with physical functions that permit life processes to occur, or in any position that causes any physical injury. Restraints shall not be applied in any manner for the purpose of administration of punishment. The inmate shall not be directed, ordered, or required to stand or sit uninterrupted if such action is intended for reasons of punishment or is likely to cause injury.

10. Any uninvolved inmate within the same cell shall also be offered shower and decontamination procedures.

11. All reports, medical requirements, and reviews required for the use of chemical agents as outlined in this rule shall be completed after the use of the PLS.

(c) Medical Attention Following Use of Force.

1. Medical Attention for Inmates Following Use of Force.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

a. Appropriate medical treatment shall be provided immediately or, in the case of a riot or other man-made or natural disaster, as soon as possible following resolution of the riot or disaster. Any treatment or follow-up action shall be documented in the Report of Force Used, Form DC6-230. A qualified health care provider shall examine any person physically involved in a use of force to determine the extent of injury, if any, and shall prepare a report that shall include a statement of whether further examination by a physician is necessary. Any noticeable physical injury shall be examined by a physician, and the physician shall prepare a report documenting the extent of the injury and the treatment prescribed. Such report shall be completed within one (1) business day of the incident and shall be submitted to the warden for initial review. The qualified health care provider and physician shall use Form DC4-701C, Emergency Room Record, to document an examination following use of force. Form DC4-708, Diagram of Injury, shall be used along with Form DC4-701C to document observed or known physical injuries. A copy of the reports, including referenced forms, shall be attached to the Report of Force Used, Form DC6-230. The original reports shall be filed in the inmate's medical record.

b. After any use of force, a clinician shall complete Form DC4-701C, Emergency Room Record, and Form

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

DC4-708, Diagram of Injury, with applicable data or the letters "N/A" used to indicate inapplicability. The attending physician or medical practitioner shall document the presence or absence of any injury in his or her records whenever force has been applied. Every physical examination of an inmate patient who has been the subject of an application of force shall be documented with specificity by the attending physician or medical practitioner to include extent of injury, type of injury, and a description of any injury. Any time a clinician reports reasonable suspicion of abuse of an inmate to the warden or the Office of Inspector General, it shall be recorded in the Use of Force Incident Report, Form DC6-210A.

c. Upon being summoned by a shift supervisor to the location of the inmate after a use of force, health services staff shall conduct an examination of the inmate after the decontamination process is completed. Health services staff or the ranking officer present shall ensure that any inmate who has a history of experiencing or who exhibits symptoms of physical distress as a result of chemical agent exposure is immediately provided all necessary medical attention. Health services staff shall record any observations and medical actions taken on Form DC4-701C, Emergency Room Record, and Form DC4-708, Diagram of Injury, including the presence or non-presence of injury.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

d. Post DFEID Deployment.

(I) Officers shall not remove DFEID probes from an inmate or other person. Observing universal precautions, DFEID probes shall be removed by medical personnel only.

(II) DFEID probes that have been removed from an inmate or other person shall be handled as biohazard waste and disposed of accordingly.

(III) Medical personnel shall visually examine the inmate to determine the presence or absence of an injury.

(IV) The shift supervisor shall ensure that photographs are taken of the inmate's body where the probes impacted the skin, which shall be attached to the Report of Force Used, Form DC6-230, prepared by the staff member who initiated the use of force.

(V) The shift supervisor shall ensure that the expended cartridge is returned to the arsenal for accountability and disposal.

Inmates shall be limited to possession of no more than 15 research items from the law library. Research items shall be loaned for a maximum of 21 days. Inmates who fail to return research items within 21 days shall be subject to disciplinary action as provided in Rules 33-601.301-.314, F.A.C.

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Class. Ms. Vaughn

Mail Number: _____
Team Number: _____
Institution: # 119

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☑ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Robert Lee | T15204 | C2122 | | 9/29/21 |

**REQUEST**                                    Check here if this is an informal grievance ☐

I Have a pending Civil Matter that contains showing proof of
dir. that I was served and found guilty of in Sept. 2019
they can find it by going on-line F.D.O.C, but it's so
much easier by this request. The Attorney General's Office informed
that classication could provide the index of September 2019
if I had any dir. for that motion.

Thank You

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Lee R.              DC#: T15204

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                              DATE RECEIVED: _____

I do not see Any DRs for Sept. 2019. Please
provide me with the violation description.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____ . (Returned, Denied, or Approved). If your informal grievance is denied,
you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): L Vaughn | Official (Signature): | Date: 9/29/21 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.     Ex.CCC

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as
required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no
later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

Robert Sinclair Lee #T15204
SANTA ROSA CORRECTIONAL Institution
5850 EAST MILTON ROAD
Milton, FLA 32583




RECEIVED OCT 25 2021

United States District Court
Northern District Court of Florida
Pensacola Division
1 North PalaFox Street
Pensacola, FLA. 32502

[LEGAL MAIL]