UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT SINCLAIR LEE,

     Plaintiff,

v.                               Case No. 3:20cv5462-MCR-HTC

LIEUTENANT T. MCCRANIE,
et al.,

     Defendants.

_____/

## ORDER and REPORT AND RECOMMENDATION

This matter is before the Court on competing motions for summary judgment. Plaintiff filed a motion and amended motion for summary judgment, ECF Docs. 49 and 51, to which Defendants responded, ECF Doc. 59. Defendants filed an amended motion for partial summary judgment, ECF Doc. 53, to which Plaintiff responded, ECF Doc. 63. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon review and careful consideration of the parties' submissions, the undersigned recommends the Defendants' motion be GRANTED, Plaintiff's motions be DENIED, and the matter referred back to the undersigned.

## I.     BACKGROUND

Plaintiff, a prisoner serving a life sentence at Santa Rosa Correctional Institution ("Santa Rosa CI"), filed an amended complaint, ECF Doc. 6, complaining of a property restriction, use of chemical agents, strip search, cell extraction, and subsequent medical care that occurred on September 4, 2019.  Plaintiff sues several SCRI officers:  Lieutenant McCranie,[1] Lieutenant Dice, Sergeant Richburg, Officer Tona, Officer Jones, Officer Boatwright, Sergeant Cattnach, and two (2) John Doe Officers.

In support of his motions, Plaintiff relies upon his sworn amended complaint, ECF Doc. 6, a general affidavit, ECF Doc. 49, a sworn Declaration, ECF Doc. 51, and the following materials: the interrogatory responses of McCranie and Dice; Plaintiff's emergency room record of September 4, 2019; the Use of Force Incident Report of Officer Eiland and the other officers involved; and Plaintiff's grievances regarding the incident (ECF Doc. 51).   Plaintiff relies on similar evidence in opposition to Defendants' motion.  ECF Doc. 63.

In support of their motion, Defendants rely upon the following:  (1) the FDOC MINS Incident Report; (2) The Authorization for Use of Force by Major Oakes; and

---

[1] The documentation signed by this Defendant in the record indicates that his proper last name is "McCranie" not "McCraine".  *See, e.g.*, Authorization for Use of Force, ECF Doc. 59-2 (Signed by Lt. McCranie, Sept. 4, 2019).  The clerk is directed to change this Defendant's last name to "MCCRANIE" in CMECF.

(3)-(9) the Use of Force Incident Reports from Officers Richburg, Cattnach, Tona, Eiland, Dice, Boatwright, and Jones.  ECF Doc. 59.

A.     **Plaintiff's Version**

As taken from the amended complaint, affidavits and declaration submitted by Plaintiff, Plaintiff offers the following version of the September 4 events:

McCranie and Tona approached Plaintiff's cell and told him he was being placed on property restriction and needed to "cuff-up or run-it."  ECF Doc. 6 at 8. When Plaintiff inquired why he was being placed on property restriction, "no reason was given." *Id.*; ECF Doc. 49 at 3.  Minutes later, a psychological counselor named Adams came to Plaintiff's cell to conduct a Crisis Intervention (which Plaintiff calls a "CIT") due to Plaintiff's mental health status in prison health records.  ECF Doc. 49 at 3.  Adams advised Plaintiff to cuff up because "[Plaintiff] know[s] what they want to do to [him]!" and told Plaintiff that once she left, "there's nothing she can do." *Id.*

McCranie then chained the door with Boatwright holding the portable camera. *Id.*  With McCranie, Boatwright and Cattnach present, "they" announced that chemical agents were going to be applied on Plaintiff for refusing a verbal order. ECF Doc. 6 at 8.  Officer Eiland, authorized by Lt. McCranie, then administered three long bursts of chemical agent while Tona was present holding a plexiglass shield.  ECF Doc. 49 at 3.  The bursts were "longer usage than normal."  ECF Doc.

6 at 8.   Lt. Dice then approached Plaintiff's back window off camera and told Plaintiff he had orders to send in the extraction team to teach Plaintiff a lesson.   ECF Doc. 6 at 8.   Dice then ordered an unknown officer to apply a second round of chemical agents, and then McCranie applied a final round of chemical agents.   ECF Doc. 6 at 8-9.

McCranie then had Nurse Jobst explain to Plaintiff the need for a decontamination shower after the use of chemical agents, and the nurse did so.   ECF Doc. 49 at 3-4.   Plaintiff was asked if he was going to comply with being showered and was directed to submit to a strip search by removing all of his clothing.   *Id.* at 4. Plaintiff agreed and did so, throwing his clothing at McCranie's feet.   *Id.* Nevertheless, McCranie ordered the cell extraction team be assembled.   *Id.*; ECF Doc. 6 at 9.

When the cell extraction team arrived, Plaintiff put his mattress on the floor, put his hands locked behind his head, and laid down.   ECF Doc. 49 at 4.   He was not causing a threat or harm to himself or staff and told the cell extraction team and Dice and McCranie that he was willing to submit.   *Id.*; ECF Doc. 6 at 9.   Nevertheless, McCranie opened the cell door and the extraction team rushed inside.

The extraction team pounced on Plaintiff with the shield and pinned him to the mattress.   *Id.* at 10.   Defendants struck Plaintiff with closed fists in his head and upper body region from the back; Richburg and Cattnach clawed out Plaintiff's eyes

with fingers which had chemical agent on them; a John Doe defendant bent Plaintiff's fingers and thumb on right hand "snapping both in the process"; different defendants were striking Plaintiff "at all different angles (choking, punching, & kicking him); "handcuffs were placed on plaintiff, but the beating continued" by Cattnach, Richburg, Tona, John Doe 1, John Doe 2; while this was happening, McCranie, Dice, Tona, Richburg, and Cattnach were chanting "stop resisting" (although Plaintiff was already not resisting).  ECF Doc. 6 at 9-10.  Richburg "out of nowhere" struck Plaintiff with set of handcuffs in left ear, eye and head several times, then passed them to Cattnach, who struck Plaintiff on the right side of his head.  *Id.* at 10-11.

When Lee complained about being hit with handcuffs, McCranie and Dice stated Plaintiff "needs to cuff up then."  Dice and McCranie blocked the camera view, to prevent the abuse from being filmed, and did nothing to stop the beating or intervene.  *Id.* at 11.  Richburg kicked Plaintiff in the face several times while other Defendants were holding him and beating him.  A John Doe defendant, while trying to remove Plaintiff's boxers, twisted his left foot trying to break it.  Meanwhile, Jones and Boatwright did nothing to intervene despite standing witness, and Dice and McCranie asked, for sake of faking it for the camera, if Plaintiff Lee was cuffed yet, so "they" made the cuffs tighter.  *Id.*

After Plaintiff was subdued, he was stripped naked outside of the shower, so that he was visible to staff (including a female) and inmates.  During the search after the removal of his boxers, Richburg "brushe[d] hand up and down Plaintiff's buttock from top to bottom with pressure added to it."  Defendants told Lee "it could have been worse" and "this is what we do to non-cooperative inmates."  *Id.* at 11.

After the shower, Plaintiff was made to walk with his head to his knees in order to hide his injuries from the camera.  *Id.*  Plaintiff was treated for some of his injuries at medical "(water in eyes, washing out ear cut inside ear)."  The nurse told Defendants, "he's banged up really bad" and recommended to Cattnach, Richburg, McCranie and Dice that Plaintiff needed to see the doctor to have his ear glued closed.  Dice and Richburg refused, saying it was "count time."  *Id.*

Plaintiff's eye was completely shut, and the nurse cleaned his head injuries from being hit by handcuffs by Richburg and Cattnach.  She stated, "looks like you got hit with something" and looked at the supervisors with a "mean look", to which Richburg stated, "that's what we do to inmates when we have to use force during cell extraction."  Tona or Cattnach then said, "You're lucky the camera was present", and McCranie told Lee he should have submitted to hand restraints from the beginning and that would have never happened to him.  *Id.* at 11-12.

Lee was escorted back to the cell where he declared a medical emergency due to his eye and ear injuries, and Jones said he would get the nurse, but Jones did not

get the nurse or doctor.   Eventually, Plaintiff saw the nurse, and Nurse Jobst informed Plaintiff that "incident reports from all defendants . . . have not been turned in timely b/c medical file is missing on 9/10/2019."  *Id.* at 12.

### B.   Defendants' Version

Defendants' version of the events concurs with many aspects of Plaintiff's but differs, of course, on the motivation for the events and the reasonableness of the force applied.  In his sworn Use of Force Incident Report, Officer Eiland states the event was precipitated because Plaintiff was to "be placed on property restriction for failure to store his state and personal property."  ECF Doc. 59-6.  In his answers to interrogatories, McCranie states the reason for the property restriction was "because the inmate's room was in disarray."  ECF Doc. 51 at 15.  Eiland also asserted that Plaintiff created a "disturbance by refusing to submit to a strip search, submit to wrist restraints and exit his cell for a cell search" needed as part of being placed on property restriction.  ECF Doc. 59-6.  Tona and McCranie were then called to assist, ECF Doc. 51 at 15, and McCranie contacted Major Oakes for authorization to use chemical agents and force.  *Id.* at 17.

In his Authorization for Use of Force form, ECF Doc. 59-2, Major Oakes states he authorized the use of chemical agents and the extraction team.  Major Oakes explains as follows:  On September 4, 2019, at approximately 1:55pm, Major Oakes was contacted by Lieutenant Tyler McCranie concerning Plaintiff.  Lieutenant

McCranie advised Oakes that Plaintiff was in his cell, refusing to submit to a strip search, submit to wrist restraints and exit his cell for a cell search and to be placed on property restriction.  Oakes was informed that due to Plaintiff's mental health level a CIT was necessary, and one was conducted by Mental Health Professional Adams with negative results.  *Id.* at 1.  Oakes then authorized the organized use of chemical agent "OC", if necessary, "to quell the disturbance Plaintiff was creating and to overcome his physical resistance to lawful commands." *Id.*

At approximately 2:25pm, McCranie returned to Oakes and informed him that Plaintiff continued to refuse orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on  property restriction following two applications of chemical agents.  Oakes then authorized the use of chemical agent "CS" if necessary, to overcome Plaintiff's physical resistance to lawful commands.  *Id.*

At approximately 2:40pm, McCranie informed Oakes that, "following two applications of chemical agent OC, and one application of chemical agent CS, Plaintiff was refus[ing] orders to submit to a strip search, submit to wrist restraints, and exit his cell for a cell search and to be placed on property restriction." *Id.*  In his Interrogatory Responses, McCranie explains that while Plaintiff did remove his shirt and pants in response to the strip search order, Plaintiff "refused to remove his boxers and submit to an unclothed search as ordered." *Id.* at 18.  Oakes thus authorized "the

use of the Forced Cell Extraction Team, if necessary, to overcome Plaintiff's physical resistance to lawful commands." *Id.*

Each of the officers present during the cell extraction filed sworn Use of Force Incident reports. *See* ECF Docs. 51 or 59. For example, Richburg stated he was called to the Cell Extraction Ready Room and donned cell extraction gear. ECF Doc. 59-3. With Jones recording with a handheld video camera, Richburg stated his name and extraction role to the camera. The team assembled in front of Plaintiff's cell, and Richburg observed that Plaintiff "refused all orders to receive his required cool water decontamination shower, and refused all verbal orders to submit to a strip search, wrist restraints and exit the cell to be placed on property restriction." *Id.* at 1. Once the team was ordered to enter the cell, Richburg explains the procedure was executed as follows:

> Officer Miller utilized downward pressure with the shield to redirect Inmate Lee to a prone position on the floor. Once on the ground, Inmate Lee continued to resist staff. Officer Cattnach and I then utilized downward pressure and pulling force on Inmate Lee's upper extremities to place his hands behind his back and secure Inmate Lee in wrist restraints. Officer Tona and Sergeant Williams utilized downward pressure on Inmate Lee's lower extremities to gain control of Inmate Lee and secure Inmate Lee in leg restraints. At this time Inmate Lee became compliant and all force ceased.

*Id.* The sworn Use of Force Reports of Cattnach and Tona, ECF Docs. 59-4 and 59-5, are essentially identical to the above, as is that of Officer Williams, ECF Doc. 51 at 33. The sworn report of Officer Miller is also identical except that it added that

Richburg and Miller escorted Plaintiff to a cold-water decontamination shower, to the medical room and then back to his decontaminated cell.  ECF Doc. 51 at 29.

## II.    LEGAL STANDARDS ON SUMMARY JUDGMENT

Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting the Advisory Committee's note to Fed. R. Civ. P. 56).  "[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-movant to establish, by going beyond the pleadings, that there is indeed a genuine issue as to the material facts its case. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  A dispute of material fact "is 'genuine' ... [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita*, 475 U.S. at 587.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). The Court must avoid weighing conflicting evidence. *Liberty Lobby*, 477 U.S. at 255; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *Pepper v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989). But where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.   THE AMENDED COMPLAINT

In the amended complaint's "Statement of Claims" section, Plaintiff lists seventeen (17) numbered claims for relief, which can be divided into the following categories.  ECF Doc. 6 at 13-14.

**Eighth Amendment excessive force:**

> Claim 1: Tona, Cattnach, Richburg, and two John Does used excessive force on Lee during cell extraction
> Claim 3: Dice and McCranie failed to intervene to stop excessive force during cell extraction
> Claim 4: Richburg and Cattnach used excessive force in striking him with handcuffs
> Claim 5: McCranie and Dice blocked the view of the camera (and re-alleges their failure to intervene) facilitating the excessive force
> Claim 6: McCranie and Dice used excessive force with chemical agents prior to the cell extraction
> Claim 9: Richburg used excessive force when he stood in front of Plaintiff and kicked him in the face during the cell extraction
> Claim 15: All nine defendants organized this abuse without due process of law
> Claim 17: Richburg and Cattnach used excessive force in clawing out his eyes with fingers covered with chemical agents

**Fourth Amendment unreasonable search and seizure:**

> Claim 16: McCranie ordered Richburg to strip Plaintiff in front of inmates and staff including females, in violation of Fourth Amendment restriction on unreasonable searches and seizures

**Property Restriction:**

> Claim 2: McCranie, Dice, Tona, Cattnach, Richburg, and the two Does deprived him of his property in violation of his 14th and 4th amendment rights
> Claim 7: McCranie and Tona deprived him of due process for putting him on property restriction without a valid reason

**Statements Made by Defendants:**

>  <u>Claim 8</u>: McCranie violated due process when she stated "if you had cuffed up this would have never happened."
>  <u>Claim 10</u>: McCranie, Dice, Richburg, Tona, Cattnach, and the two John Does violated his Fourth Amendment rights by chanting "Stop resisting" when he was already restrained.
>  <u>Claim 11</u>: Dice violated the Eighth and Fourteenth Amendments by approaching the back window (out of camera view) and telling him that he had orders to send the extraction team to "teach Lee a lesson"

**Incident Reports:**

>  <u>Claim 14</u>:  All nine defendants violated his due process rights by failing to turn in timely incident reports

**Deliberate indifferent to serious medical needs:**

>  <u>Claim 12</u>: Dice, McCranie, Richburg, Tona and Cattnach were deliberately indifferent to his medical needs by refusing to let him see a doctor

>  <u>Claim 13</u>: C. Jones was deliberately indifferent to his medical needs when Lee declared a medical emergency, but Jones failed to honor that by bringing over a nurse and then walked off after 20 minutes rather than observing him for one hour.

## IV.   ANALYSIS

As set forth below, the Court recommends Defendants' motion for summary judgment be GRANTED and Plaintiff's motions be DENIED.

### A.   Defendants' Amended Motion for Partial Summary Judgment (ECF Doc. 53).

The Defendants seek summary judgment on only three of the above categories of claims: (I) claims involving Plaintiff's placement on property restriction; (II) claims involving statements made by Defendants; and (III) claims involving

untimely incident reports.  Plaintiff contends the conduct in those claims violated his Fourth and Fourteenth Amendment rights.  Defendants are entitled to summary judgment on these claims because, as a matter of law, the conduct complained of does not rise to the level of a constitutional violation.[2]

### 1.   Property Restriction Claims

In numbered claims 2, 7, and 16, Plaintiff contends his Fourth and Fourteenth Amendment rights were violated when he was placed on property restriction, deprived of property, and strip searched.  By virtue of their incarceration, prisoners have some reduced constitutional rights and the loss of many privileges and rights. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Thus, prisoners have no reasonable expectations of privacy in their prison cells and thus no Fourth Amendment protection against unreasonable searches of their cells.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding Fourth Amendment has no applicability to a prison cell); *see also Davis v. Crew*, No. 4:13cv504/MW/CAS, 2014 WL 961201, at *8 (N.D. Fla. Mar. 11, 2014) (dismissing prisoner plaintiff's Fourth Amendment claim based upon defendant's placing him on 72-hour property restriction); *O'Connor v. Carnahan*, No. 3:09cv224/WS/EMT, 2012 WL 2201522, at *8 (N.D. Fla. Mar. 27, 2012) (holding that "*Hudson* precludes Fourth Amendment challenges to prison cell

---

[2] Because the undersigned finds these claims fail to rise to the level of a constitutional violation, the undersigned does not address the qualified immunity argument.

searches and seizures taken for any reason, whether reasonable or not"), *report and recommendation adopted*, 2012 WL 2317546, at *1 (N.D. Fla. June 15, 2012).

Moreover, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). Florida's civil theft statute provides a remedy for a defendant's knowingly obtaining or endeavoring to obtain the property of another with the intent to either temporarily or permanently deprive that person of his right to the property. *See* Fla. Stat. § 772.11(1). Finally, to the extent Plaintiff claims to be entitled to some sort of process before his placement on property restriction, he is mistaken. *See Burns v. Fugate*, 2020 WL 2198198, at *2 (M.D. Fla. May 6, 2020) ("To the extent Plaintiff's claim is premised on his placement on property restriction, his claim fails.") (citing *Woodson v. Whitehead*, 673 F. App'x 931, 933 (11th Cir. 2016) ("The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated.")).

Although Plaintiff filed an opposition to Defendants' motion, ECF Doc. 63, it does not appear that Plaintiff makes any arguments as to these property claims. Instead, the majority of the opposition is spent on the excessive force claim – but Defendants have not moved for judgment on that claim. Thus, as a matter of law,

Plaintiff cannot recover on his Fourteenth or Fourth Amendment claims and there is no reason for them to go to a jury for resolution.

>     2.      Claims Based on Statements by Defendants

In numbered claims 8, 10, and 11 Plaintiff claims Defendants violated his due process rights by making certain statements to him.  Words alone rarely, if ever, provide the basis of a constitutional violation.  *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that allegations of verbal abuse and threats by prison officials do not state a claim because "verbal abuse alone is insufficient to state a constitutional claim").  "This is because derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation."  *Dees v. Lamar*, 2021 WL 1953137 (N.D. Ala. Mar. 4, 2021), *report and recommendation adopted*, 2021 WL 1661195 (N.D. Ala. Apr. 28, 2021) (citing *Bennett v. Chitwood*, 519 F. App'x 569, 575–76 (11th Cir. 2013)); *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) (holding that verbal taunts, despite their distressing nature, fail to show a violation of an inmate's constitutional rights); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("Verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); *Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1555 (N.D. Fla. 1995) (finding that "verbal harassment and abusive language, while 'unprofessional

and inexcusable,' are simply not sufficient to state a constitutional claim under Section 1983").

Therefore, as a matter of law, Defendants are entitled to summary judgment on Plaintiff's due process claims as set forth in numbered claims 8, 10 and 11.

> ### 3.   Claims Based on Incident Reports

In numbered claim 14, Plaintiff claims Defendants violated his due process rights by not turning the incidents report in on time.   ECF Doc. 6 at 14.   As Defendants point out, however, Plaintiff offers nothing more than this conclusory allegation.   He does not explain how this harmed him in any way or why the reports were even untimely.   *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Cunningham v. School Board of Lake County*, 2016 WL 1755612, at *6 (M.D. Fla. May 3, 2016) ("[w]hile this allegation is a virtual parroting of the legal standard, it provides no factual basis from which the Court can plausibly infer that the standard … has been met").

Regardless, an allegation of noncompliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a § 1983 claim upon which relief may be granted.   *See Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (noting that many prison regulations "are primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer

rights on inmates"); *Mathews v. Moss*, 506 F. App'x 981, 984 (11th Cir.2013) (district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances); *Taylor v. White*, 2012 WL 404588, at *5 (S.D.Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *report and recommendation adopted*, 2012 WL 403849 (S.D.Ala. Feb. 7, 2012); *Jones v. Schofield*, 2009 WL 902154, at *3 (M.D.Ga. Mar. 30, 2009) ("Prison regulations and Standard Operating Procedures do not confer federal rights to prisoners that may be enforced or redressed in a § 1983 action."). Therefore, summary judgment should be granted to Defendants on the due process claims set forth in numbered claim 14.

In Plaintiff's opposition, he argues his due process rights were violated because he never received a disciplinary report. As an initial matter, this is not a claim he made in his amended complaint and Plaintiff cannot amend his complaint through an opposition to a summary judgment motion. *Miccosukee Tribe of Indians of Fla. v. U.S.,* 716 F.3d 535, 559 (11th Cir. 2013). Regardless, while a due process claim *may* arise if a disciplinary report was issued that resulted in the loss of a liberty right without the appropriate process, *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011), there is no due process right to the issuance of a disciplinary report. As stated above, even if Defendants failed to follow procedure

by not issuing a disciplinary report, such failure does not rise to the level of a constitutional violation.

**B.      Plaintiff's Motion for Summary Judgment and Second Amended Motion for Summary Judgment (ECF Docs. 49 and 51)**

Plaintiff appears to seek summary judgment in his favor on all claims.[3] However, because the undersigned recommends judgment in favor of Defendants on Plaintiff's Fourth and Fourteenth Amendment claims, Plaintiff is not entitled to judgment on those claims. Thus, the only remaining claims are Plaintiff's Eighth Amendment excessive force and deliberate indifference claims. Plaintiff is also not entitled to judgment on those claims.

While Plaintiff has provided his sworn testimony that, if believed, supports an Eighth Amendment use of excessive force claim and deliberate indifference claim, Defendants have offered sworn evidence that puts at issue Plaintiff's claims. Indeed, in Plaintiff's opposition to the Defendants' motion, Plaintiff states, "[t]he affidavit of the plaintiff and the defendants' are squarely contradictory as to what type of force was used, and why it was used." ECF Doc. 63 at 12. Thus, by Plaintiff's own

---

[3] Plaintiff filed a document entitled "Amended Motion for Summary Judgment" on or about July 21, 2021. ECF Doc. 49. Despite its title, Plaintiff had not filed a prior motion for summary judgment. Moreover, it is wholly unclear from the motion whether Plaintiff is seeking summary judgment, on what claims, or whether he mistook some of Defendants' affirmative defenses to seek summary judgment and thus was filing a "general affidavit" to oppose the entry of judgment in favor of Defendants. Regardless, because Plaintiff is proceeding *pro se*, the Court directed Defendants to file responses to both the amended motion and "second amended" motion and will treat the motions as Plaintiff's request for judgment on all claims.

admission, Plaintiff's excessive force claims cannot be decided on summary judgment.

The Use of Force Reports provides a reason for the use of chemical agents: the refusal of Plaintiff to obey verbal commands to prepare for property restriction. *See*, *e.g.*, Use of Force Reports at 59-3 through 59-9, Officer Eiland's User of Force Report at ECF Doc. 51 at 27, and Major Oakes' Use of Force Authorization at ECF Doc. 59-2.

Also, these same reports provide sworn evidence supporting the need for a cell extraction: Plaintiff refusal to remove his boxers to submit to a strip search and a decontamination shower. *See* Use of Force Reports, *supra*, and McCranie's Answers to Interrogatories, ECF Doc. 51 at 15. Third, the emergency room report, ECF Doc. 51 at 26, and Officer Miller's Use of Force Report, *id.* at 29, provide evidence putting at issue the degree of medical care Plaintiff was afforded by Defendants and therefore disputes Plaintiff's claims of deliberate indifference to serious medical needs. Thus, Plaintiff is not entitled to summary judgment. *See* Fed. R. Civ. P. 56(c).

## V.   CONCLUSION

Based on the foregoing, it is ORDERED:

1.   The clerk is directed to change the last name of Defendant McCraine to "McCranie" in the CMECF system.

Additionally, it is respectfully RECOMMENDED that:

1.     The Defendants' Amended Motion for Partial Summary Judgment (ECF Doc. 53) be GRANTED, and Plaintiff's Claims 2, 7, 8, 10, 11, and 14 be DISMISSED from the case.

2.     Plaintiff's Motion for Summary Judgment (ECF Doc. 49) and Second Amended Motion for Summary Judgment (ECF Doc. 51) be DENIED in their entirety.

3.     Judgment not be entered on any claims at this time, but the matter referred back to the undersigned to be prepared for trial.

At Pensacola, Florida, this 19th day of November 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.